Eugene OSBORN, Plaintiff,

v.

UNITED STATES, Defendant.

No. 97–766C.

United States Court of Federal Claims.

June 30, 2000.

ment of Justice, Washington, D.C., with whom were James M. Kinsella, Assistant Director, and David M. Cohen, Director, attorneys of record for the defendant. Maura T. McGowan, Major, General Litigation Division, Air Force Legal Services Agency, Arlington, VA, of counsel.

## OPINION

HORN, Judge.

The plaintiff, Eugene Osborn,[1] enlisted in the United States Air Force in August 1960. He voluntarily retired in August 1980 as a Technical Sergeant (E–6) after twenty years of service. On November 10, 1997, plaintiff filed a complaint in this court requesting two forms of relief: (1) back pay, correction of records, and promotion due to allegedly incorrect performance evaluations from 1974 to 1975; and (2) civil rights damages for alleged violation of 42 U.S.C. §§ 1981, 1983 (1994) and the Fourteenth Amendment to the United States Constitution. In his complaint, plaintiff claims damages in excess of $10,000.00 and states: "By reason of the discriminatory practices of Defendant the injury to Plaintiff is continuous, great and gregious [sic], has effected,[sic] and does effect [sic] his right and privileges as a citizen of the United States." In the supplement to plaintiff's reply to defendant's motion to dismiss, Mr. Osborn suggests that, in addition to the original claims, the Air Force owes $15,000,000,000.00 for injustice "under various Air Force Regulations ARP's and etc." and $250,000,000,000.00 "as a result of racial discrimination and segregation being practiced during plaintiff's tenure in the United States Air Force." Defendant filed a motion to dismiss for lack of subject matter jurisdiction based on the six-year statute of limitations applicable in this court, and for failure to state a claim upon which relief can be granted. In his response, plaintiff argues that equitable tolling should apply, based on allegedly fraudulent acts on the part of the defendant.

Eugene Osborn, Red Bird, OK, pro se.

Scott J. Pivnick, Commercial Litigation Branch, Civil Division, United States Depart-

---

1. When the complaint was filed, Otis W. Williams, Jr. was representing plaintiff as his attorney. After the first reply filed by plaintiff to defendant's motion to dismiss, plaintiff relieved Mr. Williams and has been representing himself for the balance of the case.

## FINDINGS OF FACT

The plaintiff, Eugene Osborn, enlisted in the United States Air Force in August 1960 and retired in August 1980 at the grade of Technical Sergeant (E–6) based on length of service (twenty years and fifteen days.) In 1973, the Air Force transferred him to Misawa Air Base, Japan as a Staff Sergeant (E–5). Plaintiff alleges that officers stationed at the base discriminated against him from April 1974 through November 1975 by mis-evaluating his performance and improperly deciding on his job assignments.

Without elaboration, according to Mr. Osborn, the Air Force "falsified the Plaintiff's Air Force Personnel records and lied about Plaintiff's performance of duty" to hide the alleged racial discrimination. As examples, but each time without further detail, plaintiff alleges the falsification of an Air Force Form 2095 in April 1974, the falsification of an Air Force Form 2095 in June 1974 to cover-up his illegal removal and reassignment from the position of golf-course manager, and another "cover-up" in February 1975 to conceal the fact that, allegedly for no reason, he was being reassigned from bowling lane manager to craft director, according to plaintiff, a civilian position.

Again without specifics, Mr. Osborn contends that Air Force personnel at Misawa Air Base issued Airmen Performance Reports (APRs) which were motivated by racial prejudice and were "events of cover-up/fraudulent concealment." Plaintiff alleges that in April 1974 he was made to believe he would receive the highest overall performance rating of 9, but that the rating was changed so that he actually received the somewhat lower rating of 8. Plaintiff also contends that in April 1975, the Air Force gave him an inaccurate assessment of his performance for the previous year. Furthermore, plaintiff alleges that in November 1975, he received an erroneous performance report as a result of having been assigned to a civilian position.

In addition to alleging that he received lower performance ratings than he deserved,

plaintiff argues that the Air Force demoted him unjustly and denied him opportunities to earn a higher rank and to receive choice assignments. For example, in September 1974, plaintiff contends that the Air Force reassigned him from his position as golf course manager in favor of "a white person who had less experience." Plaintiff also contends that the Air Force deprived him of an opportunity to be promoted to Master Sergeant (E–7) in 1975, Senior Master Sergeant (E–8) in 1977, and Chief Master Sergeant (E–9) in 1979.

Plaintiff contends that he first discovered evidence of discrimination and fraudulent concealment in August 1990.[2] He does not specify the nature of such evidence or how he discovered it. However, plaintiff alleges that this "affirmative discovery" in August 1990 was the first time he had a "preponderance of evidence" sufficient to "fix the government liability and entitle the claimant to institute an action...." As a result of his discovery, Mr. Osborn contends that he filed a discrimination complaint with the Misawa Air Base, Japan, Equal Employment Opportunity Commission in 1992, but that a later search found no record of the complaint.

In May 1979 the plaintiff first applied to the Air Force Board for the Correction of Military Records (AFBCMR or Board) seeking to have three performance reports voided. The Board denied his application. Mr. Osborn continued to seek to have the three Misawa APRs voided, applying to the Board on seven subsequent occasions. Each request for correction of these APRs was denied. For example, in a letter dated July 12, 1990, the Board denied his request for retroactive promotion, as follows:

> The applicant has not submitted his request within the 3 year time frame required by AFR 31–3. There are no provisions for an automatic promotion as the applicant is requesting. The applicant claims the alleged error or injustice was discovered in 1974, 1975 and 1976 but that newly discovered relevant evidence is being submitted for consideration by the

---

2. Mr. Osborn's statements are somewhat confusing, in that, in his supplement to plaintiff's reply, he alleges a "first affirmative discovery" "in August 1990," a "second affirmative discovery after 1993 (1997)[sic]," and a "third affirmative discovery" "after April 1982."

AFBCMR. We fail to find any supporting statements from any individuals in the applicant's case file—only his allegations. In the absence of any documentation to the contrary, we have no reason to believe the applicant was not considered fairly and correctly while he was on active duty. In addition, airman promotion historical records are maintained for a period of 10 years computed from the date of the original selection process as outlined in AFR 4–36. Consequently, promotion records are not available when the application was on active duty.

Plaintiff filed his last application to the Board on April 10, 1995, in which he requested that his records be corrected because they were falsified to cover up racial discrimination. He sought retroactive promotion, back pay, disability pay and damages. On April 1, 1996, the Board informed the plaintiff that it denied his application. Mr. Osborn then filed his present complaint with this court. With respect to the Board's actions from 1979 through 1995, plaintiff contends that the Board "with common plan, design, and purposes, by aiding, abetting, advising and assisting each other have attempted to 'conceal' the fact that his treatment was not performance related, but was a result of racial animas."

After plaintiff filed his complaint, defendant filed a motion to dismiss the plaintiff's complaint for failure to state a claim on which relief can be granted, and for lack of subject matter jurisdiction. Defendant contends that Mr. Osborn's cause of action for civil rights damages is not within the jurisdiction of the Court of Federal Claims. The government also contends that the plaintiff filed his complaint more than seventeen years after his cause of action accrued upon retirement in August 1980, well beyond the court's six-year statute of limitations contained in 28 U.S.C. § 2501 (1994). Plaintiff responds that the statute was tolled due to fraud on the part of the government, including alleged falsification of personnel documents.

## DISCUSSION

The defendant has filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(4) of the Rules of the United States Court of Federal Claims (RCFC) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte*, or on appeal. *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir. 1993), *reh'g denied* (1993); *United States v. Newport News Shipbuilding & Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178 (Fed. Cir.1996). When construing the pleadings pursuant to a motion to dismiss, the court should not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Son Broadcasting, Inc. v. United States*, 42 Fed. Cl. 532, 537 (1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted)).

Pursuant to RCFC 8(a)(1) and the Federal Rules of Civil Procedure 8(a)(1), a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir. 1997), *reh'g denied* (1997). *Pro se* plaintiffs can be held to less stringent standards than formal pleadings drafted by lawyers. *Boyle v. United States*, 44 Fed.Cl. 60 (1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652, *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972)), *aff'd*, 200 F.3d 1369 (Fed.Cir.2000).

Nonetheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

When deciding on a motion to dismiss based on either lack of subject matter jurisdiction or failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989). If a defendant challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. at 189, 56 S.Ct. 780; *see also Land v. Dollar,* 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 747; *Catellus Development Corp. v. United States,* 31 Fed.Cl. 399, 404–05 (1994). The court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. *Indium Corp. of America v. Semi–Alloys, Inc.,* 781 F.2d 879, 884 (Fed.Cir.1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986).

■ In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C.A. § 1491 (West 1994 & Supp.1998). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C.A. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, statutory, or regulatory law. *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir. 1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims, "it does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *see also Saraco v. United States,* 61 F.3d at 865 (citing *Zumerling v. Devine,* 769 F.2d 745, 749 (Fed.Cir.1985)) (citing *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. 948); *see also United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. For claims founded on a statute or regulation to be successful, "the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948 (quoting

*Eastport S.S. Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009 (1967)); *see also Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir.1996), *reh'g denied* (1997).

Mr. Osborn's complaint alleges two causes of action. Plaintiff seeks money damages and correction of his military records, together with promotion to a higher grade; and seeks damages based on alleged violations of 42 U.S.C. §§ 1981, 1983 (1994 & Supp. III 1997) and the Fourteenth Amendment to the Constitution.

As a preliminary matter, "strong policy reasons compel courts 'to allow the widest possible latitude to the armed services in their administration of personnel matters.'" *Voge v. United States,* 844 F.2d 776, 782 (Fed.Cir.) (quoting *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804 (1979)), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988). Accordingly, absent a statute or regulation entitling a service member to a promotion as a matter of law, it is not appropriate for the Court of Federal Claims to entertain that claim. *Id. See also United States v. Testan,* 424 U.S. 392, 402, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) ("[O]ne is not entitled to the benefit of a position until he has been duly appointed to it."); *Orloff v. Willoughby,* 345 U.S. 83, 90, 73 S.Ct. 534, 97 L.Ed. 842, *reh'g denied,* 345 U.S. 931, 73 S.Ct. 779, 97 L.Ed. 1360 (1953) ("Whatever control courts have exerted over tenure or compensation under an appointment, they have never assumed by any process to control the appointing power either in civilian or military positions."); *Reale v. United States,* 208 Ct.Cl. 1010, 1012, 529 F.2d 533 ("No soldier has a legal right to a promotion until he receives it."), *cert. denied,* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 129 (1976) (rehearing denied); *Thomas v. United States,* 42 Fed.Cl. 449, 452–53 (1998), *aff'd,* No. 99–5055, 1999 WL 820446, 217 F.3d 854 (Fed.Cir. Oct.7, 1999) (table); *Longhofer v. United States,* 29 Fed.Cl. 595, 604 (1993) ("A promotion is not a right, privilege, or property.").

Regarding this court's jurisdiction, "When a contract is not involved, to invoke jurisdiction under the Tucker Act, a plaintiff must identify a constitutional provision, a statute, or a regulation that provides a substantive right to money damages". *Tippett v. United States,* 185 F.3d 1250, 1254–55 (Fed.Cir. 1999). When such a statute exists, "the terms of the statute waiving sovereign immunity define the extent of the court's jurisdiction and must be strictly construed." *Brown v. United States,* 30 Fed.Cl. 227, 229 (1993) (citing *Block v. North Dakota ex rel. Board of University and School Lands,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983)), *aff'd,* 26 F.3d 139 (Fed.Cir.1994) (table).

For military pay cases contesting the nature of discharge from a branch of the armed forces, 37 U.S.C. § 204 (1994 & Supp. III 1997) is such a money-mandating statute. *Tippett v. United States,* 185 F.3d at 1255. Section 204 entitles a service member to basic pay while on active duty:

(a) The following persons are entitled to the basic pay of the pay grade to which assigned or distributed, in accordance with their years of service computed under section 205 of this title—

(1) a member of a uniformed service who is on active duty; and

(2) a member of a uniformed service, or a member of the National Guard ... who is participating in full-time training, training duty with pay, or other full-time duty, provided by law ....

37 U.S.C. § 204. The terms of the statute entitle a service member to the basic pay of the pay grade to which assigned. *See Sanders v. United States,* 219 Ct.Cl. 285, 296–97, 594 F.2d 804 (1979) (en banc) ("37 U.S.C. § 204 ... confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service."). However, in plaintiff's case, 37 U.S.C. § 204 is not an appropriate money-mandating statute which would allow this court to exercise jurisdiction under 28 U.S.C. § 1491. *Ewing v. United States,* 36 Fed.Cl. 159, 162 (1996).

If a plaintiff's retirement from the military is voluntary, no jurisdiction resides in the Court of Federal Claims under 37 U.S.C. § 204. *Sammt v. United States,* 780 F.2d 31, 33 (Fed.Cir.1985). When a plaintiff has re-

tired by choice, "it follows as a matter of logic that his final separation and retirement were not unlawful and, consequently, he is not entitled to reinstatement to active duty." *Thomas v. United States,* 42 Fed.Cl. 449, 452 (1998). The United States Court of Appeals for the Federal Circuit reasoned in *Tippett v. United States:*

> If Tippett's discharge was involuntary and improper, his statutory right to pay was not extinguished and thus serves as a basis for Tucker Act jurisdiction. If, however, Tippett's discharge was voluntary, his right to pay ended upon his discharge. He thus would have retained no statutory entitlement to compensation, and consequently no money-mandating provision would support Tucker Act jurisdiction over his claim.

*Tippett v. United States,* 185 F.3d at 1255 (citations omitted).

The Court of Appeals for the Federal Circuit had earlier articulated the rule that a voluntary discharge bars jurisdiction over a military pay claim in *Sammt v. United States,* 780 F.2d at 31, in which the plaintiff was nonselected twice for promotion to the grade of lieutenant colonel, and pursuant to Army regulations he was placed on a retired list after the nonselections. *Id.* at 32. Major Sammt requested early retirement. *Id.* When he brought suit, Major Sammt argued that his nonselection was based on erroneous information included in his records. *Id.* On appeal from an opinion finding that Major Sammt's retirement was involuntary because it was mandated by statute, the Court of Appeals for the Federal Circuit reversed, finding no jurisdiction over plaintiff's claim. *Id.* at 33. The court reasoned, "If his retirement was voluntary, no jurisdiction resides in the Claims Court .... To the extent that the civilian pay cases articulate the rationale that a choice of unpleasant alternatives does not make a choice involuntary, that rationale is applicable here." *Id.* at 33; [3] *see also Moyer*

*v. United States,* 190 F.3d 1314 (Fed.Cir. 1999).

The Court of Federal Claims also consistently has followed *Sammt v. United States,* barring claims for back pay when a plaintiff's retirement was voluntary. *See, e.g., Gallucci v. United States,* 41 Fed.Cl. 631, 643 (1998) (finding that a former Captain's choice to voluntarily resign from the Marine Corps in the face of a recommendation for administrative separation barred his claim for reinstatement in this court); *Brown v. United States,* 30 Fed.Cl. 227, 230 (1993) (finding no jurisdiction to review a claim for reinstatement to active duty, retroactive promotion, back pay, and allowances when the plaintiff resigned "for the good of the Service" pending a court-martial evaluation); *Longhofer v. United States,* 29 Fed.Cl. 595, 603 (1993) ("Since one who voluntarily retires has no entitlement to reinstatement, promotion, or back pay, we hold that this court lacks subject matter jurisdiction over Col. Longhofer's claim.").

Moreover, a military resignation is presumed to be voluntary. *Heaphy v. United States,* 23 Cl.Ct. 697, 700 (1991), *aff'd,* 972 F.2d 1355 (Fed.Cir.1992). A plaintiff can rebut this presumption by showing that he or she could not exercise free choice in the decision to separate from the military, and that the requirement was the result of duress, coercion, misrepresentation, or mental incompetence. *Longhofer v. United States,* 29 Fed.Cl. 595, 601 (1993). An absence of free choice sufficient to rebut the presumption of voluntariness can be made by a showing that a resignation was either (1) secured through duress or coercion by government officials; (2) submitted under time pressure; (3) obtained through intentional misrepresentation upon which the plaintiff relied; (4) secured under circumstances in which the plaintiff was mentally incompetent; or (5) that the plaintiff made an attempt to withdraw the resignation before it became effec-

---

**3.** Similarly, the Federal Circuit has concluded in civilian pay cases that if an employee's retirement was voluntary, no jurisdiction resides in the United States Claims Court to review the case, and that the exercise of an option to retire is not rendered involuntary by the imminent imposition of a less attractive alternative, absent deception,

coercion or duress. *See Griessenauer v. Dep't of Energy,* 754 F.2d 361, 364 (Fed.Cir.1985); *Covington v. Dep't of Health and Human Servs.,* 750 F.2d 937, 942 (Fed.Cir.1984) (dicta); *Taylor v. United States,* 219 Ct.Cl. 86, 92, 591 F.2d 688 (1979); *Christie v. United States,* 207 Ct.Cl. 333, 338, 518 F.2d 584 (1975).

tive, but was summarily refused. *Gallucci v. United States*, 41 Fed.Cl. at 638; *see also Scharf v. Dep't of the Air Force*, 710 F.2d 1572, 1574–75 (Fed.Cir.1983) (misrepresentation); *Christie v. United States*, 207 Ct.Cl. 333, 338, 518 F.2d 584 (1975) (coercion, duress). As discussed above, the exercise of an option to retire is not rendered involuntary by the impending prospect of a less desirable alternative.

■ The court finds that Mr. Osborn's retirement from the Air Force was voluntary. First, plaintiff has not argued or brought forth competent evidence to rebut the presumption that he voluntarily retired by showing that the elements of duress, time pressure, misrepresentation, or mental incompetence were present at the time of his separation. Also, the facts in his filings with this court do not support such an inference. Second, the plaintiff's DD Form 214, "Certificate of Release or Discharge from Active Duty," reflects a separation date from the United States Air Force of August 31, 1980, plaintiff's character of service as "Honorable," and his reason for separation as "retirement after 20 years and 15 days." The separation code in block 26 of the plaintiff's DD Form 214 reflects "voluntary retirement for years of service." Under 10 U.S.C. § 8914 (1994), "an enlisted member of the Air Force who has at least 20, but less than 30, years of service computed under section 8925 [titled 'Computation of years of service: voluntary retirement; enlisted members'] of this title may, upon his request, be retired." *See Gant v. United States*, 918 F.2d 168, 169 (Fed.Cir.1990), *cert. denied*, 498 U.S. 1107, 111 S.Ct. 1013, 112 L.Ed.2d 1095 (1991). The plaintiff himself has advised the court that, "[a]t no time prior [to his retirement date] was I asked to leave the United States Air Force." Based on these facts, and the presumption that retirement is voluntary, the court finds that the plaintiff's retirement was voluntary, and, therefore, that 37 U.S.C. § 204 is not a money-mandating statute providing this court with jurisdiction in plaintiff's case.

Plaintiff also cites Air Force Regulation 31–3 in an attempt to invoke jurisdiction over his first cause of action. This regulation pertains to the Air Force Board for the Correction of Military Records (AFBCMR) and derives its legal authority from 10 U.S.C. § 1552 (1994). Air Force Regulation 31–3, "Air Force Board for the Correction of Military Records," (May 31, 1985). Section 1552 states:

(a)(1) The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department....

\* \* \* \* \* \*

(c) The Secretary concerned may pay, from applicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his or another's service in the Army ....

10 U.S.C. § 1552. As quoted above, section 1552 provides that the Secretary of the Army "may pay" a military pay claim if an amount is found to be due. The United States Court of Appeals for the Federal Circuit has stated that, "[b]y its terms, section 1552(c) does not mandate pay at all. Rather, it provides for appropriate discretionary payment by the Secretary in certain circumstances." *Dehne v. United States*, 970 F.2d 890, 894 (Fed.Cir. 1992) (citations omitted); *Longval v. United States*, 41 Fed.Cl. 291, 302 (1998); *Pride v. United States*, 40 Fed.Cl. 730, 734 (1998); *Hernandez v. United States*, 38 Fed.Cl. 532, 537 (1997); *Ewing v. United States*, 36 Fed. Cl. 159, 163 (1996). *Dehne*, however, does not cite an earlier United States Court of Claims case, *Blum v. United States*, which held that "10 U.S.C. § 1552 is a statute expressly mandating compensation ...." *Blum v. United States*, 227 Ct.Cl. 555, 559 n. 3, 1981 WL 21399 (1981). The court in *French v. United States*, 42 Fed.Cl. 49, 53 (1998), *aff'd*, 194 F.3d 1338 (Fed.Cir.1999) (table), discussed the need for the Federal Circuit to reconcile *Dehne* and *Blum*. In *Sanford v.*

*United States*, the court acknowledged the *Dehne* case, but found section 1552 to be pay-mandating. Discussing the discrepancy, the *Sanford* court wrote:

> Since *Blum*, a three-judge panel of the federal circuit ruled that section 1552 is not a money mandating statute. *See Dehne*, 970 F.2d at 894; *accord Barth v. United States*, 28 Fed.Cl. 512, 515 (1993). Although this court finds the rationale of the *Dehne* court compelling, absent an *en banc* decision by the federal circuit, this court is constrained to hold that section 1552 confers subject matter in the instant case. *See Maniere v. United States*, 31 Fed.Cl. 410, 415 (1994) (citing *Messerschmidt v. United States*, 29 Fed.Cl. 1, 61, *aff'd*, 14 F.3d 613 (Fed.Cir.1993), *cert. denied*, [511] U.S. [1010], 114 S.Ct. 1382, 128 L.Ed.2d 57 (1994)).

*Sanford v. United States*, 32 Fed.Cl. 363, 367 (1994). *See also French v. United States*, 42 Fed.Cl. at 53. Definitive guidance regarding whether or not section 1552 is a pay-mandating statute in spite of its discretionary language awaits further clarification by the Court of Appeals for the Federal Circuit. This court, however, does not reach the issue in this case in light of the discussion below.

Plaintiff's second claim must be dismissed under RCFC 12(b)(4) as a claim for which relief cannot be granted in this court. In his second cause of action, plaintiff alleges racial discrimination under 42 U.S.C. §§ 1981, 1983 (1994 & Supp. III 1997) and the Fourteenth Amendment. In a reply brief, plaintiff clarified his claim as a "claim for damages ... as a result of racial discrimination and segregation being practiced, during Plaintiffs [sic] tenure in the United States Air Force ... aris[ing] under Executive Order 9981 'eliminating segregation in the Armed Services,' and provisions of AFR 30–2, AFI 36–2701 and AFI 36–2706 ...." Plaintiff cites *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) in order to invoke jurisdiction over these civil rights claims. This case is not applicable. In *Griggs v. Duke Power Co.*, plaintiffs brought a civil rights claim in the United States District Court for the Middle District of North Car-

olina and then appealed to United States Court of Appeals for the Fourth Circuit. District courts have been given jurisdiction to hear claims for civil rights damages by virtue of 28 U.S.C. § 1343(a)(4) (1988); the Court of Federal Claims has not.

■ It is well settled that this court does not have jurisdiction over civil rights claims brought under Title VII of the Civil Rights Act of 1964 or 42 U.S.C. §§ 1981 or 1983. *Blassingame v. United States*, 33 Fed.Cl. 504, 505, *aff'd*, 73 F.3d 379 (Fed.Cir.1995) (table) (rehearing denied), *cert. denied*, 517 U.S. 1237, 116 S.Ct. 1885, 135 L.Ed.2d 179 (1996); *Bunch v. United States*, 33 Fed.Cl. 337, 341 (1995), *aff'd*, 78 F.3d 605 (Fed.Cir. 1996) (table); *Lee v. United States*, 33 Fed. Cl. 374, 378–79 (1995). Such jurisdiction has been granted to the United States District Courts, therefore, the United States Court of Federal Claims cannot entertain plaintiff's claim based upon alleged civil rights violations.

■ Plaintiff also mistakenly attempts to rely on the Equal Protection Clause of the Fourteenth Amendment to the Constitution as a basis for jurisdiction in this court. The language of the Equal Protection Clause, however, does not mandate payment of money and, thus, also does not invoke jurisdiction under the Tucker Act. 28 U.S.C. § 1491(a)(1); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed.Cir.1995); *Mullenberg v. United States*, 857 F.2d 770, 773 (Fed.Cir.1988); *see also Richards v. United States*, 20 Cl.Ct. 753, 757–58 (1990). Therefore, this court does not have jurisdiction to review plaintiff's Equal Protection allegations.

Even if this court had jurisdiction over any of Mr. Osborn's claims, plaintiff filed his complaint outside the applicable statute of limitations time period. A six-year statute of limitations governs military pay claims brought in this court. 28 U.S.C. § 2501 (1994). The statute of limitations time limit "is jurisdictional in nature and, as an express limitation on the waiver of sovereign immunity, may not be waived." *Hart v. United States*, 910 F.2d 815, 818–19 (Fed.Cir.1990); *see also Soriano v. United States*, 352 U.S. 270, 273, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372,

1376–77 (Fed.Cir.1998); *Colon v. United States,* 35 Fed.Cl. 515, 517 (1996).

■ "A claim against the United States first accrues when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *Oceanic Steamship Co. v. United States,* 165 Ct.Cl. 217, 225, 1964 WL 8621 (1964); *accord Kinsey v. United States,* 852 F.2d 556, 557 (Fed.Cir.1988). *See also Japanese War Notes Claimants Ass'n of the Phillippines, Inc. v. United States,* 178 Ct.Cl. 630, 632, 373 F.2d 356 (1967), *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967), *reh'g denied,* 390 U.S. 975, 88 S.Ct. 1020, 19 L.Ed.2d 1192 (1968); *Lipp v. United States,* 157 Ct.Cl. 197, 199, 301 F.2d 674 (1962), *cert. denied,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963) ("[I]f the Army was wrong in releasing an officer to inactive duty not for reasons physical ... a cause of action would immediately accrue and suit could be immediately filed.").

■ Moreover, claims under 10 U.S.C. § 1552 accrue not upon issuance of a Board decision, but rather when the events which gave rise to plaintiff's claim for money occurred and which led to the Board action. Appeal to an Air Force Board for the Correction of Military Records is a permissive remedy. *Heisig v. United States,* 719 F.2d 1153, 1155 (Fed.Cir.1983) ("[A]lthough relief has usually been first sought from military correction boards since their creation in 1946, [in military pay cases] there is here no requirement of exhaustion of administrative remedies prior to pursuit of judicial review." (footnote omitted)). Because appeal to the correction board is permissive, plaintiff's applications to the AFBCMR following August 1990 did not toll the statute of limitations. *See Hurick v. Lehman,* 782 F.2d 984, 987 (Fed.Cir.1986); *Lipp v. United States,* 157 Ct.Cl. at 200, 301 F.2d 674; *Colon v. United States,* 35 Fed.Cl. at 518.

■ Defendant argues that the statute of limitations in the case at bar accrued in August 1980 when Mr. Osborn separated from the military because "a cause of action contesting the fact, circumstances, or characterization of a military separation from service accrues, for the purposes of the statute of limitations, at the time the service member separates from the service." Plaintiff, however, is not contesting the characterization or fact of his separation from the service, but rather his failure to receive OERs and promotions he believes he deserved.

For the statute of limitations to run, Mr. Osborn needed to be aware of sufficient facts to know that he had been wronged. *See Cottrell v. United States,* 42 Fed.Cl. 144, 154 (1998). Arguably, when he received, in his mind, lower than appropriate performance reports in 1974 and 1975; or when he was not selected for promotion in 1975; or, for that matter, nonselected for promotion between 1975 and 1980, the latter being the year of his retirement, Mr. Osborn had sufficient facts for the statute to run. *See Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed.Cir.1988) ("it is not necessary that the plaintiff obtain a complete understanding of all the facts" before the statute begins to run). *See also Sanders v. United States,* 32 Fed.Cl. 573, 575 (1995) ("Claims alleging an unlawful failure to promote accrue on the date the application for promotion is denied," citing *D'Andrea v. United States,* 27 Fed.Cl. 612, 614 (1993), *aff'd,* 6 F.3d 786 (Fed.Cir.1993)); *Wright v. United States,* 19 Cl.Ct. 779, 784 (1990). All of these dates, of alleged improper performance reports, promotion nonselection, and his retirement date, make the filing of plaintiff's complaint beyond the applicable statute of limitations, given that Mr. Osborn's filed his complaint in this court on November 10, 1997. *See Sanders v. United States,* 32 Fed. Cl. at 575 ("Although the date Mr. Sanders' application [for promotion] was denied is not clear, by the time Mr. Sanders retired on September 1, 1967, all the events necessary to establish the government's liability had occurred.") Moreover, Mr. Osborn himself states in his supplement to plaintiff's reply that his date of discovery that he had been wronged was in August 1990 and that in August 1990 he was entitled to institute an action, which is still beyond the six-year statute of limitations. *See Cottrell v. United States,* 42 Fed.Cl. at 155 ("Moreover, plaintiff designated this very date as the 'date of

discovery' of the 'alleged error or injustice' . . . .").

Plaintiff, however, argues that in his case the doctrine of equitable tolling should toll the application of the statute of limitations, citing *Hopland Band of Pomo Indians v. United States*, 855 F.2d at 1573. Plaintiff states in his reply to defendant's motion to dismiss:

> Although couched in language referencing discrimination and disparate treatment, the substance of Plaintiff's claims survive [sic] because of the intentional acts by the Defendant in delaying, obstructing and prohibiting Plaintiff from prosecuting the same. . . .
>
> The Courts have generally supported the view that, where fraud went undiscovered by the Plaintiff because the Defendant took positive or affirmative steps after commission of fraud to keep it concealed, the limitation period of 2501 was tolled.

 The doctrine of equitable tolling applies in suits against the government as well as against private litigants. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), *reh'g denied*, 498 U.S. 1075, 111 S.Ct. 805, 112 L.Ed.2d 865 (1991); *see also Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (finding that equitable tolling is read into the federal statute of limitations). "[W]hen the object of the suit is to obtain relief against a fraud, the bar of the statute does not commence to run until the fraud is discovered or becomes known to the party injured by it." *Bailey v. Glover*, 21 Wall. 342, 88 U.S. 342, 347, 22 L.Ed. 636 (1874). Therefore, to toll a statute of limitations, a claimant either must show that the defendant has concealed its acts with the result that the plaintiff was unaware of their existence or that the injury was inherently unknowable. *Japanese War Notes Claimants Ass'n of the Phillippines, Inc. v. United States*, 178 Ct.Cl. 630, 634, 373 F.2d 356 (1967). But when a plaintiff discovers the existence, or could have discovered the existence, of a cause of action, the cause of action

accrues for the purposes of calculating the statute of limitations. *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir.1988). In some cases, "the running of the statute will be suspended when an accrual date has been ascertained, but plaintiff does not know of his claim." *Japanese War Notes Claimants Ass'n of the Phillippines, Inc. v. United States*, 178 Ct.Cl. at 634, 373 F.2d 356. However, "Ignorance of rights which should be known is not enough." *Id.* The court also cautioned:

> Once the statute of limitations has been tolled, it is not necessary that plaintiff obtain a thorough understanding of all the facts to halt the suspension. Defendant is not required to wait until plaintiff has started substantiating its claims by the discovery of evidence. Once plaintiff is on inquiry that it has a potential claim, the statute can start to run.

*Id.*

Assuming, for the sake of argument, plaintiff's allegation that the Air Force falsified forms is true, such fraud could toll the statute of limitations.[4] However, even if the Air Force had concealed discriminatory acts or falsified records, of which there is no evidence in the record, such that he was not aware of a potential claim, Mr. Osborn, himself, admits that by August 1990 he discovered evidence of discrimination relevant to his claim for back pay and correction of military records entitling him to institute an action. He states in his supplement to plaintiff's reply to defendant's motion to dismiss that "[t]he first affirmative discovery to show that a 'preponderance of evidence' exists and that unlawful discrimination has occurred and fix the government liability and entitle the claimant to institute an action was in August 1990." At best, for plaintiff, even if the statute of limitations had been tolled, such knowledge would have commenced the running of the statute of limitations in 1990, over seven years before he filed his complaint in this court.

---

4. Plaintiff states in his supplement to plaintiff's reply that "[p]laintiff accepts the Defendant stipulation of fraud," but nowhere in the government's discussion of equitable tolling nor in any of its briefs does the defendant stipulate to fraud.

Although plaintiff also asserts a later affirmative discovery after 1993, he has not offered any proof showing that this later discovery led to a new cause of action. Without such proof, he has not established jurisdiction by showing that facts necessary to sustain his cause of action were not apparent in 1990 when he discovered sufficient facts to entitle him to institute an action. The doctrine of equitable tolling cannot replace a lack of due diligence on the part of the plaintiff to file a timely complaint.

 In his first reply to defendant's motion to dismiss, Mr. Osborn suggested an alternate theory regarding the statute of limitations. He states: "[s]ubsumed within Plaintiff's claims of disparate treatment is his claim of continuing fraud through his service period and continuing during his various appeals to the Air Force Board for the Correction of Military Records . . . ." In some cases, a cause of action for back-pay has been characterized as a continuing claim in which "each failure to make a proper payment gives rise to a new cause of action." *Entines v. United States*, 39 Fed.Cl. 673, 682 (1997) (quoting *Russell v. United States*, 161 Ct.Cl. 183, 186, 314 F.2d 809 (1963)), *aff'd*, 185 F.3d 881 (Fed.Cir.) (table), *cert. denied*, 526 U.S. 1117, 119 S.Ct. 1766, 143 L.Ed.2d 796 (1999); *see also Brown Park Estates–Fairfield Devel. Co. v. United States*, 127 F.3d 1449, 1456 (Fed.Cir.1997) ("In order for the continuing claim doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages."); *Friedman v. United States*, 159 Ct.Cl. 1, 7, 310 F.2d 381 (1962) (rehearing denied). To establish a continuing claim, where repeated government action or inaction results in repeated causes of action, a plaintiff must show that (1) Congress has not delegated to an administrative officer the duty to determine claimant's eligibility for pay; (2) the case turns on pure issues of law or specific issues of fact not otherwise entrusted to an administrative tribunal; and (3) the court is asked to resolve sharp and narrow factual issues not demanding judicial evaluation of broad concepts such as disability. *Friedman v. United States*, 159 Ct.Cl. at 7, 310 F.2d 381, *followed by*

*Hatter v. United States*, 203 F.3d 795 (Fed. Cir.2000) (en banc).

Plaintiff's claims do not meet all the factors necessary to establish a continuing claim. Although he alleges that the Air Force has stipulated to fraud, there is neither evidence that defendant concurs, nor is there evidence of fraud in the record. Also, the factual issues in this case are far from "sharp and narrow," as they involve review of various discretionary procedures on the part of the Air Force and the AFBCMR. Regarding pure issues of law, plaintiff alleges that "various Air Force regulations [and] ARP's [sic]" entitle him to back pay. However, these allegations do not point to a specific statute in support of a continuing claim. Finally, even if Mr. Osborn's claims for active duty pay at a higher grade were continuing claims, the statute of limitations based on allegedly faulty OERs and denials of promotions would have terminated upon his retirement in August 1980 and, thus, are barred by the applicable statute of limitations. *Blaine v. United States*, 5 Cl.Ct. 502, 506 (1984) ("Plaintiff's right to active duty pay ended at least upon his retirement from service."), *aff'd*, 765 F.2d 155 (Fed.Cir.1985) (table).

Once a defendant challenges jurisdiction, the plaintiff can no longer rely on unsupported allegations of jurisdiction, and must instead bring forth evidence to establish jurisdiction by a preponderance of the evidence. *See McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. at 189, 56 S.Ct. 780; *Reynolds v. Army & Air Force Exch. Serv.*, 846 at 747. Although plaintiff makes many assertions, they remain unsupported allegations even after the court and the defendant requested additional support, and the plaintiff filed a supplement to his reply to defendant's motion to dismiss in response to what the plaintiff termed a "request for particulars." The plaintiff has not met his evidentiary burden of establishing jurisdiction in this court under 28 U.S.C. § 2501. Because plaintiff's claim, filed in this court on November 10, 1997, was filed more than six years after his alleged causes of action accrued, this court has no jurisdiction to hear plaintiff's claim.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction is **GRANTED**. The plaintiff's complaint is **DISMISSED**, with prejudice, pursuant to RCFC 41(b). The Clerk's Office shall enter judgment consistent with this opinion.

**IT IS SO ORDERED.**