

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-19-2003

# Sarullo v. US Postal Ser

Precedential or Non-Precedential: Precedential

Docket No. 01-4203

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Sarullo v. US Postal Ser" (2003). *2003 Decisions.* Paper 6.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/6

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed December 19, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4203

PATRICK SARULLO,
*Appellant*

v.

UNITED STATES POSTAL SERVICE; WILLIAM
HENDERSON, POSTMASTER GENERAL;* WILLIAM
BROWN, MANAGER HUMAN RESOURCES UNITED
STATES POSTAL SERVICE; THOMAS L. MODAFERRI;
MARTIN C. DUBINSKI; BARBARA HIGGINS, POSTAL
INSPECTORS; LINDA WYATT, POSTMASTER; JEFFREY
KERKEN, SUPERVISOR; MARTIN SPIELMAN,
SUPERVISOR; WILMA MEDERO

On Appeal for the United States District Court
for the District of New Jersey
(D.C. No. 96-cv-03241)
District Judge: Honorable Nicholas H. Politan

Argued: September 18, 2002

Before: BECKER, *Chief Judge,*** SCIRICA*** and
McKEE, *Circuit Judges*

* William Henderson is substituted for his predecessor, Marvin Runyon, as Postmaster General of the United States Postal Service, pursuant to Fed. R. App. P. 43(c)(2).

** Judge Becker's term as Chief Judge ended on May 4, 2003.

*** Judge Scirica became Chief Judge on May 4, 2003.

(Filed: December 19, 2003)

ANNE M. PERONE, ESQ. (Argued)
Perone & Perone
490 Somerset Street
North Plainfield, NJ 07060
*Attorney for Appellant*

CHRISTOPHER J. CHRISTIE
United States Attorney
SUSAN HANDLER-MENAHEM, ESQ.
 (Argued)
Assistant United States Attorney
970 Broad Street
Suite 700
Newark, NJ 07102
*Attorney for Appellee*
*United States Postal Service*

ERIC TUNIS, ESQ. (Argued)
Kirkpatrick & Lockhart, LLP
The Legal Center
One Riverfront Plaza, Seventh Floor
Newark, NJ 07102
*Attorney for Appellee*
*Linda Wyatt*

## OPINION OF THE COURT

PER CURIAM.

Patrick Sarullo, a former employee of the United States Postal Service, was arrested for dealing drugs at work and was subsequently discharged. Sarullo, denying the charge, brought a *Bivens* action for malicious prosecution arising out of the arrest and also a claim against the Postal Service under Title VII for discrimination based on age and national origin and retaliation for a previous EEO claim. The District Court granted summary judgment for the Postal Service, holding (1) that Sarullo's allegations could not defeat the individual defendants' qualified immunity with respect to the *Bivens* claim; and (2) that Sarullo had not established

a *prima facie* case of employment discrimination or retaliation. We affirm with respect to the discrimination and retaliation claims. With respect to the *Bivens* claim, we dismiss for lack of subject matter jurisdiction on the grounds that the Civil Service Reform Act affords Sarullo the exclusive remedy for his malicious prosecution claim. We therefore need not reach the question of qualified immunity discussed by the District Court.

## I.  BACKGROUND

In the fall of 1992, Sarullo became the focus of an investigation being conducted by agents of the United States Postal Service ("USPS"). Postal Inspector Thomas Modaferri received information from Postmaster Zeevalk of the Westfield Post Office that a postal employee named "Pat" who lived on Cherry Street, was selling drugs to postal employees inside the South Plainfield post office ("South Plainfield"). Based on this information, Inspector Modaferri initiated an investigation. He first spoke with South Plainfield Postmaster Linda Wyatt to determine if an employee named "Pat" lived on Cherry Street in South Plainfield. She informed Modaferri that Pat Sarullo was the only employee named "Pat" in South Plainfield and confirmed that Sarullo lived on Cherry Street. Modaferri did not inform Wyatt why he was inquiring.

Shortly thereafter, Wilma Medero was hired at South Plainfield as a casual clerk. Medero had worked as a police informant in Plainfield on over 125 investigations, and was highly recommended by the Plainfield Police Department. Medero was asked to assist in Modaferri's investigation even though (or perhaps because) Medero had a criminal record.[1] While assisting in the investigation, Medero was expected to appear for work and perform her assigned

---

1. Although Sarullo faults Modaferri for relying upon someone with a criminal record, Modaferri may well have reasoned that someone with Medero's criminal background would know how to learn if illegal drugs were being sold. Medero would presumably also be sufficiently familiar with the culture surrounding illicit sales of controlled substances to know how to win the confidence of the seller without arousing the suspicion of the seller.

duties while simultaneously trying to learn about any drug sales inside the post office. She was not told that an employee named "Pat" was targeted or under suspicion, nor was she given any other information about the investigation. Nevertheless, based upon information she learned while working at South Plainfield, Medero soon identified Sarullo as a source for narcotics inside the post office.

On December 15, 1992, Medero informed Modaferri that she had arranged to purchase drugs from Sarullo the next day. Modaferri then asked two Postal Inspectors, Karen Higgins and Martin Dubinski, to assist with the controlled buy that Medero had arranged. On December 16, Modaferri, Higgins, and Dubinski met with Medero. Modaferri searched Medero and her car and then gave her a tape recorder to record her transaction with Sarullo. Modaferri then watched as Medero entered the post office. She came back less than an hour later and told the investigators that Sarullo did not have the drugs.

Medero made arrangements to buy drugs from Sarullo again on January 11, 1993, after Sarullo had shown her $120 worth of cocaine. On January 11, Modaferri and Higgins met Medero near the post office. Medero was again searched, then given a recording device and $130 in cash, and the inspectors watched as she entered the post office. Medero returned about 40 minutes later and gave Modaferri a foil package, ten remaining dollars, and the recording device. The recorder did not contain any drug related conversations.

Medero arranged another buy from Sarullo on January 14, 1993. On that date, Medero telephoned Modaferri and told him that Sarullo had an "eight ball" (1/8th of an ounce of cocaine) for sale for $180. A short time later, Medero met with Modaferri, Higgins, and Dubinski. Medero was searched, then given the tape recorder, and $190 cash. This time, Dubinski attempted to watch the transaction from the upstairs gallery of the post office. However, his view was obstructed and he was not able to see Medero or Sarullo below neck level. Shortly thereafter, Medero informed Modaferri that she had purchased cocaine from Sarullo. At approximately 9:48 a.m., Medero met Modaferri

and gave him a foil package filled with a white powdery substance. Modaferri then searched Medero and retrieved ten dollars remaining from the transaction as well as the tape recorder. However, once again, the recorder contained no drug related conversations. Medero arranged a final transaction for February 18, 1993. On that date, as before, Modaferri met Medero in the parking lot outside the post office. Medero was searched and given a recorder and $170, then she went into the post office. When she returned, she told the investigators that she had gone to Sarullo's station in the post office and obtained a brown paper napkin and a plastic baggy containing a white powdery substance from Sarullo's drawer. Medero gave Modaferri the powdery substance and the recording device and she was once again searched.

Chemical analysis confirmed that the powder Medero claimed to have obtained from Sarullo during each controlled buy was cocaine. Accordingly, on July 14, 1993, Modaferri and officers from the South Plainfield Police Department arrested Sarullo. Less than three weeks later, Sarullo received a Notice of Removal from the USPS informing him that he was being terminated effective August 7, 1993 as a result of his criminal activity. Apparently undaunted by this notice, Sarullo filed a union grievance contesting his removal. On September 15, 1994, after a hearing and testimony from all relevant witnesses, an arbitrator issued an opinion upholding the termination. The arbitrator credited Medero's testimony about Sarullo's drug sales and concluded that USPS was therefore justified in terminating him.

Sarullo was subsequently indicted and tried for possession and distribution of a controlled substance. However, the jury was unable to reach a unanimous verdict and the prosecution subsequently moved to dismiss the indictment rather than attempt a retrial.

On January 20, 1995, Sarullo sought counseling from an Equal Employment Opportunity ("EEO") Counselor on his claim that he had been terminated from the post office because of his Native American ancestry. The Equal Employment Opportunity Commission ("EEOC") dismissed that claim because Sarullo had not contacted an EEOC

counselor within forty-five days of his termination as required by regulations. Sarullo had waited a year and a half after his termination before contacting an EEO Counselor. Sarullo had previously made an EEO claim during his employment with the USPS. In 1989, Sarullo entered into a settlement with Steve Kubala, Sarullo's supervisor at that time, for Sarullo's EEO claim of employment discrimination and harassment based on Sarullo's race. The circumstances surrounding this settlement are the basis for Sarullo's claim that his discharge from the USPS was in retaliation for prior EEO activity.

Sarullo wrote Postmaster Wyatt on March 29, 1995, requesting reinstatement to his position with USPS. That letter was forwarded to William Brown, District Manager of Human Resources for the Northern New Jersey District, who was responsible for reinstatement decisions. Brown denied Sarullo's request pursuant to a USPS policy prohibiting rehiring persons who have been removed for cause. Brown was the only person involved in the decision not to reinstate Sarullo, and it is uncontested that Brown had no knowledge of Sarullo's race, age, or prior EEO activity when he made the decision.

## II.  PROCEDURAL HISTORY

On July 1, 1996, Sarullo filed suit in the United States District Court for the District of New Jersey against the USPS, Postmaster General Marvin Runyon,[2] and eight current or former USPS employees. Sarullo asserted claims for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.* and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626 *et seq.* (the "ADEA."). The Court also interpreted Sarullo's complaint to include a cause of action for a constitutional tort under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

The District Court dismissed all Title VII and ADEA

_____

2. Postmaster General Henderson was thereafter substituted as Postmaster Runyon's successor.

claims against all defendants except Postmaster General Runyon and USPS based upon its conclusion that Sarullo could only maintain an action for job discrimination against his employer, not against other employees. However, the District Court determined that Sarullo's *Bivens* claim against USPS survived a Rule 12 (b) (6) motion.[3] The District Court based its determination that Sarullo had asserted a cause of action under Bivens for malicious prosecution on its conclusion that *Albright v. Oliver*, 510 U.S. 266, 269-71 (1994), permitted a claim for malicious prosecution to rest on a Fourth Amendment right.

The individual defendants then moved for reconsideration, arguing that the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of Title 5, United States Code), provides the only remedy for any employment related causes of action and that the District Court therefore lacked subject matter jurisdiction over Sarullo's claim of malicious prosecution. The District Court dismissed Sarullo's claim against Brown because Sarullo had not alleged that Brown was involved in the actions underlying the alleged malicious prosecution. However, the Court refused to dismiss any of the remaining claims. The Court concluded that Sarullo had alleged a *Bivens* action that "does not constitute an adverse employment action under the CSRA."

Thereafter, however, the Court granted the remaining individual defendants' motions for summary judgment based upon its conclusion that each was entitled to qualified immunity. In the alternative, the District Court found that Sarullo's malicious prosecution claim failed on

---

3. In his complaint, Sarullo characterized his constitutional claim as arising under § 1981. The District Court recharacterized it as asserting a *Bivens* claim because the defendants were federal rather than state officers. *Cf. Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001) ("A *Bivens* action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law."). The defendants do not object and both parties address the constitutional claim under *Bivens*. We will do the same.

the merits because the defendants had probable cause to institute criminal proceedings against him.

The District Court also granted the Postmaster General summary judgment on Sarullo's claims of discrimination because there was no evidence that failure to rehire Sarullo was based on discriminatory animus or Sarullo's prior EEOC activity. The District Court concluded that the proffered reason for not rehiring Sarullo was a legitimate nondiscriminatory purpose. This appeal followed.[4]

## III.  DISCUSSION

### A.  Subject Matter Jurisdiction Under The CSRA

The CSRA provides a comprehensive statutory scheme which enables federal employees to obtain remedies for prohibited personnel practices engaged in by federal agencies. The defendants, relying upon *Bush v. Lucas*, 462 U.S. 367 (1983), argue that the CSRA affords Sarullo the exclusive remedy for his malicious prosecution claim and that the District Court therefore lacked jurisdiction over his claim for malicious prosecution as it "relate[d] to his employment relationship with the postal service . . . ."

In *Bush*, the Supreme Court held that "the history and structure of the CSRA spoke with sufficient clarity to preclude the creation of a new *Bivens* claim." *Mitchum v. Hurt,* 73 F.3d 30, 35 (3d Cir. 1995). In *Mitchum*, we held that the CSRA affords the exclusive remedy for damage claims of federal employees seeking redress for alleged constitutional violations arising out of the employment relationship. We noted that the employment relationship underlying disputes between federal employees and the government implicates the interest of the government as

---

4. We examine the evidence in the light most favorable to Sarullo and resolve all reasonable inferences in his favor. *See Stewart v. Rutgers*, 120 F.3d 426, 431 (3d Cir. 1997). We affirm a grant of summary judgment if there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

employer and therefore gives rise to "'special factors counseling hesitation' [that] militate against the creation of a new [*Bivens*] damages remedy." *Mitchum*, 73 F.3d at 34 (quoting *Bush*, 462 U.S. at 377 (quoting *Bivens*, 403 U.S. at 396)). Accordingly, we must at the outset determine whether we have subject matter jurisdiction to resolve the merits of Sarullo's *Bivens* claim for damages based upon the alleged malicious prosecution. *See Rice v. United States Dep't of Alcohol, Tobacco & Firearms*, 68 F.3d 702, 707 (3rd Cir. 1995), *overruled on other grounds by Pontarelli v. United States Dep't of the Treasury*, 285 F.3d 216 (3d Cir. 2002) (en banc).

In *Schweiker v. Chilicky*, 487 U.S. 412 (1988), the Supreme Court announced a very broad rule, holding that a *Bivens* action for an alleged constitutional tort will not lie "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration." *Id.* at 423. We agree with the government that, under *Chilicky*, this is a case arising out of the employment context and that the CSRA therefore provides the full scheme of remedies available to Sarullo. Sarullo allegedly engaged in illegal drug activity at his place of employment during regular business hours. His supervisors, alerted to this possibility, understandably became concerned and launched an internal investigation into these alleged wrongdoings. Sarullo was discharged after the investigation revealed that he was dealing drugs at work.

A commonsense reading of the CSRA and of the jurisprudence it has generated forces us to conclude that measures designed to investigate an employee who is dealing drugs at work are actions arising out of the employment context.[5] True, those same actions could have

---

5. The CSRA contains a number of lengthy definitions of personnel actions and the circumstances under which they become "prohibited personnel practices," including the requisite motive, most of which are unhelpful here. *See, e.g.*, 5 U.S.C. §§ 2302 (a)-(b), 7512. As the Ninth Circuit noted in *Saul v. United States*, 928 F.2d 829 (9th Cir. 1991), *Bush* holds squarely that the CSRA prevents federal employees from

taken place in a wide variety of places: Sarullo's home, the street corner, a local bar. But under the facts of this case, these alleged actions took place at work, and Sarullo was discharged because of his alleged drug dealings at work — not because of alleged illegal activity taking place in the privacy of his own home — or elsewhere — outside of working hours. There is no reasonable explication of the CSRA which would have us decide that dealing drugs at work is not related to the employment context.

This conclusion is supported by the jurisprudence of other circuits. In *Lombardi v. Small Business Administration*, 889 F.2d 959 (10th Cir. 1989), the plaintiff, an intern at the Small Business Administration, filed a *Bivens* claim after his termination. The intern sought damages and injunctive relief alleging violation of his constitutional rights by the Small Business Administration and its officials. The Court held that the intern could not pursue a *Bivens* claim because:

> the violations complained of by the Appellant occurred only as a result of the employment relationship with the Small Business Administration. His position as a federal employee is central to his complaints, and it is this employment relationship that the Supreme Court emphasized in *Bush* and its progeny, rather than the nature of the specific violation involved. This Court can find no facts in the case at bar that sufficiently distinguish it from the numerous other cases finding no *Bivens* remedies in similar situations, especially in light of the Supreme Court's clear directive in *Chilicky*.

*Id.* at 961.

Just as in *Lombardi*, Sarullo's status as a federal employee is central to his complaint, and the CSRA therefore precludes his claim. In addition to the initial bar

---

bringing *Bivens* actions to job-related wrongs and the specification of "covered actions" clearly reflects a congressional intent to extend the CSRA to the kind of decisions that are endemic in the daily dynamics of the employee/employer relationship. We have no doubt that a discharge of an employee is such a personnel action.

announced in *Bush v. Lucas* where the CSRA was held to preclude a *Bivens* claim for the abridgment of the plaintiff's First Amendment rights, our sister circuits have found *Bivens* claims to be similarly barred by the CSRA under a number of different circumstances. *See, e.g.*, *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1576-77 (11th Cir. 1990) (CSRA held to preclude plaintiff's *Bivens* claims for due process infractions)*; Berrios v. Dep't. of the Army,* 884 F.2d 28, 30-33 (1st Cir. 1989) (CSRA held to preempt plaintiff's defamation suit against former supervisors).

Sarullo argues that his claim for malicious prosecution does not fall within the scheme of remedies provided by the CSRA and that he is entitled to prosecute a *Bivens* claim because "[n]ot all personnel actions are covered by [the CSRA]. . . . [C]ertain actions by supervisors against federal employees, such as wiretapping, warrantless searches, or uncompensated takings, would not be defined as 'personnel actions' within the statutory scheme." *Bush*, 462 U.S. at 386 n.28. Based on this dicta, Sarullo claims that the investigation initiated against him by his supervisors was not a "personnel action" within the statutory scheme and that the CSRA therefore does not provide a remedy. We disagree.

While it is true that Sarullo's supervisors placed a tape recorder on their informant, an action that bears a similarity to wiretapping, and that such an activity did not itself constitute a "personnel action" within the CSRA's statutory scheme, Sarullo did not prosecute a statutory or Fourth Amendment damages claim because of the interception, but rather a claim for malicious prosecution. Under the facts of this case, the attempted tape recording was one of the actions that Sarullo's supervisors (clumsily) took during the investigation they conducted to determine whether Sarullo was engaged in illegal drug sales at the work place, but it was certainly not the central factor that led to his arrest and prosecution. As we have noted, no conversations relating to drugs were actually recorded during these alleged drug transactions. Despite the failed recording, Sarullo was nevertheless indicted and tried for possession and distribution of a controlled substance.

Thus, although the recording itself does not qualify as a "personnel action" within the statutory scheme implemented by the CSRA, the recording constitutes only a small part of the overall investigation, and a botched one at that.

Because Sarullo's claim for malicious prosecution clearly arises in the employment context, in light of the broad rule of *Chilicky* and its progeny, we conclude that the CSRA provides him with his sole remedy. For these reasons, we hold that the District Court lacked subject matter jurisdiction to hear Sarullo's *Bivens* claim as such a claim was barred by the comprehensive statutory scheme provided in the CSRA, and should have dismissed the *Bivens* claim for lack of subject matter jurisdiction.

## B.   Discrimination

In addition to his malicious prosecution claim, Sarullo alleges employment discrimination based on his race, and age, as well as illegal retaliation for his prior EEO complaint. However, Sarullo has not established a *prima facie* case of discrimination or retaliation and the District Court therefore properly granted summary judgment on these claims.

The familiar *McDonnell Douglas* burden shifting analysis applies to Sarullo's claims of discrimination under both Title VII and the ADEA. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000). Accordingly, Sarullo bears the initial burden of establishing a *prima facie* case by a preponderance of the evidence. *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 506 (1993).[6] When a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection."

6. The requirements for a *prima facie* case of Title VII race discrimination and age discrimination under the ADEA are substantially the same. *See Stanziale*, 200 F.3d at 105. The only real distinction is that for age discrimination, an individual is a member of a protected class if he is forty years of age or older. *See* 29 U.S.C. § 631.

*McDonnell Douglas*, 411 U.S. at 802. If the defendant meets this burden, the presumption of discriminatory action raised by the *prima facie* case is rebutted. *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981). The plaintiff then must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action. *Id.* at 253; *McDonnell Douglas*, 411 U.S. at 804.

The existence of a *prima facie* case of employment discrimination is a question of law that must be decided by the Court. It requires a showing that: (1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. *McDonnell Douglas*, 411 U.S. at 802; *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 348 n.1, 352, 356 (3d Cir. 1999).[7] However, the *prima facie* test remains flexible and must be tailored to fit the specific context in which it is applied. *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996).

---

7. The facts necessary to establish a *prima facie* case of discrimination under Title VII vary depending on the particular circumstances of each case. *McDonnell Douglas*, 411 U.S. at 802 n.13. The defendants suggest that the fourth element requires a showing that "other similarly situated employees outside [Sarullo's] protected class were more favorably treated under similar circumstances." While a number of our decisions suggest such a showing was required in the past, *see, e.g.*, *Lawrence v. Nat'l. Westminster Bank*, 98 F.3d 61, 68 (3d Cir. 1996) (plaintiff must prove he/she was replaced by person outside protected class to create an inference of discrimination), that is not the current law in this or the majority of the circuits. *See Pivirotto*, 191 F.3d at 354. In *Pivirotto,* we explicitly rejected a requirement that a plaintiff prove he was replaced by someone outside the protected class to prove a *prima facie* case of discrimination. 191 F.3d at 352. We require only that the plaintiff show that the employer continued to seek out individuals with similar qualifications after refusing to rehire the plaintiff under circumstances that raise an inference of unlawful discrimination. *See id.* ("Nowhere did the [Supreme Court] describe the fourth element as hiring of (or, by implication, replacement by) a person outside the plaintiff's class.")

The first three elements of Sarullo's *prima facie* case are not disputed. He is of Native American ancestry, and more than forty years old. He is therefore a member of a protected class under Title VII (his ethnicity) and the ADEA (his age), and his qualifications are not in dispute.[8] He suffered an adverse employment action when he was terminated and not rehired. However, Sarullo can not establish that USPS's failure to rehire him raises an inference of discriminatory animus. The "central focus" of the *prima facie* case "is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.' " 191 F.3d at 352 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). Sarullo's evidence of race discrimination consists solely of his own assertion that he was not rehired because he is Native American. He attempts to support that allegation using his own deposition and affidavits suggesting that most of his coworkers and supervisors knew that he was Native American and some of them called him derogatory nicknames referencing his Native American heritage. However, he has not claimed that employees who are not Native American have been rehired after having criminal charges dismissed. Although he need not establish that precise kind of disparate treatment to establish a claim of discrimination, he must establish some causal nexus between his membership in a protected class and the decision to not rehire him.

In addition, USPS suggests that Sarullo does not meet the second prong of the test because he was terminated for cause (his arrest and grand jury indictment for possession and distribution of a controlled dangerous substance). We agree. Sarullo's drug activity fatally undermines his suggestion that USPS's actions raise the inference of discrimination necessary to his *prima facie* case.

---

8. In 1989 and 1990, Sarullo received a number of disciplinary letters from the USPS, two of them in lieu of seven-day suspensions, for failure to follow official instructions and for working in an unsafe manner. Neither of these past disciplinary actions lead to the inference that he was unqualified for his position.

Moreover, USPS offered uncontradicted evidence that William Brown, the Manager of the Human Resources Department for the Northern New Jersey District, independently decided that Sarullo was not entitled to reinstatement. While Sarullo alleges that his supervisors and coworkers knew of his Native American ancestry, those individuals were not involved in the decision to deny reinstatement. Sarullo has provided no evidence to rebut Brown's affidavit stating that when he denied Sarullo's reinstatement he was unaware of Sarullo's "race, color, national origin, age, or prior EEO activity" or that Sarullo had made allegations of name calling and improper language in the workplace. Furthermore, nothing here supports an inference that Brown heard of Sarullo's Native American heritage through an office "grapevine." Brown's office was located in Newark, many miles from the South Plainfield facility.

It is undisputed that Brown was unaware of any ethnic name-calling,[9] and there is no evidence that he knew Sarullo's "race, color, national origin, age or prior EEO activity." Brown simply followed a USPS policy of denying "reemployment to former employees who had been removed from their position for cause." App. at 636a. Sarullo's attempt to state a cause of action against Brown is therefore meritless.

Sarullo's "evidence" of age discrimination is also speculative. It consists solely of his claim that USPS has hired nine younger employees since his termination. Even assuming *arguendo* that is true, it does not raise an inference that Sarullo's age was a factor in USPS refusing to rehire him. Sarullo fails to offer anything to counter Brown's testimony that he (Brown) did not know Sarullo's age. Although an employee's physical appearance might suggest that he/she is more than forty years of age, nothing on this record suggests Sarullo's appearance conveys knowledge that he is over forty, and Sarullo has

---

9. Sarullo claims that Wyatt and Spielman knew of the alleged name-calling as well as of his "age, race, national origin, current grievances and complaints and prior EEO activity." Sarullo makes no similar claim with respect to Brown's knowledge.

not alleged the contrary. Absent knowledge of Sarullo's age, Brown's decision not to reinstate him does not raise an inference of age discrimination.

Moreover, even if Sarullo could establish that his age was known by the relevant decision makers at USPS, he would not automatically prevail. Rather, as explained above, the burden would simply shift to USPS to offer a non discriminatory explanation for its failure to rehire him. USPS would have to "'clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center*, 509 U.S. at 507 (quoting *Burdine*, 450 U.S. at 254-55 & n.3) (emphasis in original).[10]

Sarullo does not dispute that William Brown was the appropriate person to decide if he should be reinstated. Brown concluded that reinstating an employee who had been terminated because of an arrest for selling drugs inside a post office facility was not in the best interest of USPS even though the criminal charges were subsequently dismissed following a mistrial. It is hard to find fault with that rationale, and nothing on this record raises doubts about his true motivation.

Sarullo must produce sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons for not rehiring him are a pretext for illegal discrimination or retaliation. He may meet this burden and defeat a motion for summary judgment by providing evidence that would allow a fact finder reasonably to "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999) (quoting *Fuentes v. Perskie*, 32

---

10. Within the *McDonnell Douglas* burden-shifting framework, the defendant only has the burden of production because the burden of proof in a discrimination claim remains with the plaintiff. *Burdine*, 450 U.S. at 253.

F.3d 759, 764 (3d Cir. 1994); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d. 1061, 1067 (3d Cir. 1996)).

Sarullo can accomplish this by showing that the defendants' proffered reasons are weak, incoherent, implausible, or so inconsistent that "a reasonable factfinder could rationally find them unworthy of credence." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997). He can also meet this burden with evidence that "the employer's articulated reason was not merely wrong, but that it was 'so plainly wrong that it could not have been the employer's real reason.'" *Jones*, 198 F.3d at 413 (quoting *Keller*, 130 F.3d at 1109).

Sarullo has not produced sufficient evidence to refute the defendants' explanation of why he was not rehired. He alleges that his supervisors and coworkers were out "to get him." He attempts to explain Brown's independent decision against reinstatement by arguing that USPS had erected a "glass wall" between Brown and the rest of Sarullo's former supervisors and coworkers. However, no evidence is offered to contradict Brown's statement that he made the reinstatement decision without knowledge of Sarullo's ethnicity or age. Sarullo merely claims that the proffered explanation for not rehiring him is a "sham." Absent countervailing proof, that is nothing more than Sarullo's personal view of his employer's explanation and falls far short of establishing pretext. *See Jones*, 198 F.3d at 414. Sarullo's response is thus insufficient to defeat a motion for summary judgment.

## C. Retaliation

In 1989, Sarullo entered into an EEO settlement with Steve Kubala who was then his supervisor at USPS. Sarullo had claimed that Kubala had discriminated against him and harassed him based upon race. Sarullo now argues that the decision to not reinstate him following dismissal of the criminal charges was motivated, at least in part, by a desire to retaliate for having filed an EEOC complaint against USPS in the past.

A plaintiff alleging that an unfavorable job action is based upon an illegal retaliatory motive in violation of Title VII

must first establish that "(1) he was engaged in protected activity; (2) he was [subject to an adverse job action] subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the [subsequent adverse job action]." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997).

Sarullo can establish the first prong of this test because he engaged in protected activity in 1989. The events giving rise to the present case occurred in 1992. He also satisfies the second part of the inquiry as USPS obviously failed to rehire him after that 1989 complaint.[11] However, Sarullo's attempt to establish a *prima facie* case of retaliation fails because there is nothing in the record to suggest a relationship between the decision to not rehire and the prior EEOC activity. As noted above, it is undisputed that USPS has a policy against rehiring an employee who is terminated with cause and nothing here suggests that the policy was enforced so inconsistently as to support an inference that it was invoked here merely as a pretext for retaliation. We conclude that no reasonable fact finder could conclude anything other than that USPS would have made exactly the same decision regarding Sarullo's rehiring if he had never filed an EEOC complaint. We can not accept his argument that the record here would allow a reasonable fact finder to conclude that the decision not to rehire him was somehow tainted by EEOC activity. Moroever, Sarullo has provided no evidence to rebut Brown's declaration that he was unaware of Sarullo's prior EEO activity when he made his decision not to reinstate Sarullo. Thus, the District Court properly granted summary judgment. *See Jones*, 198 F.3d at 415.

---

11. The fact that the prior complaint was filed in 1989 weakens Sarullo's claim, but is not fatal to it. We have held that " 'the mere passage of time is not legally conclusive proof against retaliation,' " particularly when the plaintiff is subject to a continuous pattern of harassment following the protected activity. *Woodson*, 109 F.3d at 920 (quoting *Robinson v. SEPTA*, 982 F.3d 892, 894 (3d Cir. 1993)). Sarullo does allege a continuing pattern of harassment.

## IV.  CONCLUSION

For the reasons set forth above, we will affirm the District Court's grant of summary judgment in favor of the defendants with respect to the discrimination and retaliation claims. The *Bivens* claim will be dismissed for lack of subject matter jurisdiction.[12]

A True Copy:
    Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*

---

12. Sarullo also argues that the District Court abused its discretion in refusing to allow him to amend his complaint under Fed. R. Civ. P. 15(a). However, the District Court explained that such an amendment would be futile and properly exercised its discretion to deny the amendment. We agree. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3rd Cir. 1997). Accordingly, the Court did not abuse its discretion in denying the attempt to amend this complaint.

Sarullo also complains that the District Court erred in granting summary judgment even though discovery was not yet complete. We assume that this refers to the Court's denial of his motion to compel discovery under Fed. R. Civ. P. 37(a). However, the District Court explained why that motion was improper, and we affirm the Court's decision substantially for the reasons set forth by the District Court.

Finally, we also deny the government's motion to dismiss Sarullo's appeal because the Notice of Appeal failed to specify the orders Sarullo was appealing. Under *Drinkwater v. Union Carbide, Corp.* 904 F.2d 853, 858 (3d Cir. 1990), we may exercise jurisdiction of unspecified prior orders related to a final order.