NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1194
_____

DENNIS L. CARLSON,
Appellant

v.

TOWNSHIP OF LOWER ALLOWAYS CREEK; MAYOR WALLACE BRADWAY;
MEMBERS OF TOWNSHIP COMMITTEE OF LOWER ALLOWAYS CREEK;
JOHN DOES 1-10 (fictitious names), jointly, severally, and/or in the alternative
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil Action No. 06-3779)
District Judge: Honorable Robert B. Kugler
_____

Submitted Under Third Circuit LAR 34.1(a)
April 28, 2011
_____

Before: SLOVITER, GREENAWAY, JR., and ROTH, Circuit Judges

(Opinion Filed:  September 29, 2011)

_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

Appellant Dennis Carlson ("Carlson") sued the Township of Lower Alloways Creek (the "Township"), Mayor Wallace Bradway ("Bradway"), and members of the Lower Alloways Creek Township Committee (the "Committee") (collectively, "Appellees"). His initial complaint contained claims of age discrimination and retaliation in violation of the Age Discrimination and Employment Act ("ADEA") and the New Jersey Law Against Discrimination ("NJLAD"), and in violation of the New Jersey Tenure Statute, N.J. STAT. ANN. § 40A:9-154.6.

An initial round of dispositive motions led to Carlson's amended complaint which added new claims of breach of contract, misrepresentation, breach of the duty of good faith and fair dealing, and denial of due process. A second round of dispositive motions led to summary judgment for Appellees. The District Court denied Carlson's motions for reconsideration of its grant of summary judgment and, in the alternative, to amend his amended complaint. Carlson filed a timely notice of appeal of the District Court's summary judgment and reconsideration rulings.[1] He contends that there is sufficient evidence to allow a reasonable juror to conclude the Township's proffered reasons for terminating Carlson were pretextual. We disagree. For the reasons explained below, we

---

[1] Although Carlson refers in his Notice of Appeal to the District Court's initial summary judgment ruling following his initial complaint. His current appeal is limited to the retaliation claims under the NJLAD and ADEA.

2

will affirm the District Court's judgment.

## I.  BACKGROUND

We write primarily for the parties and recount only the essential facts.

On October 3, 2000, the Township Committee (the "Committee") adopted a motion to appoint Carlson as Temporary Public Works Manager, effective through December 31, 2000.  On October 30, 2000, the Committee and Carlson entered into an employment contract which provided that Carlson would serve as Superintendent of Public Works from January 1, 2001 through December 31, 2003.

According to Carlson, during and after the campaign for the Committee's election in late 2003 and early 2004, Committee persons Dale G. Donelson ("Donelson") and Richard Harris ("Harris") made comments expressing their intent to get older employees out of the Township Police Department and Public Works Department.  In early 2004, the Committee asked certain Township employees in the Department of Public Works if they were interested in early retirement.  In December 2003 or January 2004, Carlson complained to Donelson and Harris regarding his concern that certain workers felt pressured into early retirement.

In December 2004, the Township filed disciplinary charges against Carlson.  The allegations included:

> (1) failing to properly and timely perform his job duties; (2) lying to
> Deputy Mayor Richard Harris regarding an incident in which Township
> employees damaged someone's flowers; (3) behaving inappropriately
> toward other employees; (4) demonstrating a poor management style; [(5)]

3

and using incorrect calculations to justify keeping garbage collection in-house.

(App. at 10.)  In March 2005, the Township began a hearing on the disciplinary charges against Carlson, but did not complete the hearing.  The charges were not pursued further and no disciplinary action was imposed on Carlson.

On July 14, 2005, Carlson filled out an Equal Employment Opportunity Commission ("EEOC") Charge Information Questionnaire.  In it, he contended that the Township was trying to discharge him because of his age and as a form of retaliation, though he did not specify in the questionnaire the actions prompting the alleged retaliation.  He cited the Township's December 17, 2004 disciplinary charges against him as the last date of harm.  Carlson further alleged that the Township was motivated by the impending date of his eligibility for tenure and his refusal to be "partial."[2]  (App. at 519.)

On August 26, 2005, Mayor Bradway and Committee member Robert Drummond ("Drummond") met with Carlson.  They informed Carlson that David Hinchman ("Hinchman"), an employee who had worked for Carlson and had testified against Carlson at the March 2005 disciplinary hearing, had reported that Carlson was retaliating against him because of that testimony.  Mayor Bradway and Drummond told Carlson that such retaliation was illegal and sent him a memorandum memorializing the meeting which Carlson declined to sign.  Carlson indicated to them that he would instead submit a

---

[2] Carlson does not define "partial" in his EEOC Questionnaire; however, he has not raised the issue on appeal and it has no impact on our analysis.

written response. Shortly after this meeting, Drummond approached Mayor Bradway and stated that he believed Carlson should be terminated.

On August 27, 2005, Carlson filed a grievance. The grievance alleged that the August 26, 2005 meeting was harassment and retaliation for Carlson's "expectation of the Public Works employees to provide an efficient and effective service to the residents of this and the other Townships we serve." (App. at 524.) In the grievance, Carlson also stated that he had "filed charges with the E.E.O.C."[3] (Id.)

On September 2, 2005, Drummond and Mayor Bradway sent Carlson a letter in response to his grievance advising him that he was "required to report to, be directed by and perform duties as directed by the Mayor, or when practical, by the Township Committee." (Id. at 526.) The letter also stated that because the August 26 meeting was "part of [Carlson's] obligation and not a disciplinary action," the grievance procedure was not applicable. (Id.) In addition, the letter noted that Carlson's grievance stated that he "ha[d] 'filed with the EEOC,'" and based on that information, "the Township underst[ood]" that he had "decided not to further pursue any internal mechanisms for dispute resolution that may be available. . ." (Id. at 527.)

On September 6, 2005, Carlson requested that his grievance be scheduled in open session at the September 20, 2005 Township meeting. On September 12, 2005, the

---

[3] Although Carlson filled out his EEOC Questionnaire on July 14, 2005, he filed his EEOC charge in September, 2005.

5

Committee denied this request. In the denial, Mayor Bradway and the Committee

explained, in part, that,

> [p]ursuant to OPMA [the Open Public Meetings Act], matters involving
> litigation or anticipated litigation cannot be discussed in open public
> session . . . OPMA precludes discussion of any matters, such as these,
> involving confidential personnel matters and/or which may intrude on
> privacy concerns or other employees.

(Id. at 530.) That same day, Carlson also received notice that the Committee would meet

on September 20, 2005 regarding his employment. On September 20, 2005, the

Committed unanimously adopted a resolution to immediately remove Carlson from his

position, pursuant to Township Code, Section 32-18.[4]

On March 9, 2006, the EEOC issued a determination finding reason to believe that

the Township had violated the ADEA. On August 11, 2006, Carlson filed his initial civil

complaint in the United States District Court for the District of New Jersey against the

Township, Mayor Bradway, and members of the Township Committee. In his complaint,

_____

[4] Section 32-18 of the Lower Alloways Creek Code reads

> Removal from office.
>
> The Superintendent of Public Works may be removed by a three-fifths vote
> of the Township Committee. The resolution of removal shall become
> effective three (3) months after its adoption by the Township Committee.
> The Township Committee may provide that the resolution shall have
> immediate effect; provided, however, that the Township Committee shall
> cause to be paid to the Superintendent of Public Works forthwith any
> unpaid balance of his salary and his salary for the next three (3) calendar
> months following the adoption of the resolution.

(App. at 296.)

6

Carlson alleges a violation of the ADEA; Intentional Infliction of Emotional Distress; a violation of the NJLAD, N.J. STAT. ANN. § 10:5-1 et seq. (including allegations that Mayor Bradway aided and abetted the discriminatory acts of the Township Committee); and a violation of the New Jersey Tenure Statute, N.J. STAT. ANN. § 40A:9-154.6.

On March 28, 2008, the Appellees filed a motion for partial summary judgment of Carlson's tenure statute claim and all claims against Mayor Bradway and the Committee.

On December 2, 2008, the District Court granted Appellees' motion regarding Carlson's Tenure Statute claim and all claims against members of the Township Committee, but denied Appellees' motion with respect to Carlson's claim that Mayor Bradway aided and abetted a violation of the NJLAD.

On December 8, 2008, Carlson filed an amended complaint, adding new claims of breach of contract, misrepresentation, breach of the duty of good faith and fair dealing, and denial of due process. On March 31, 2009, the Township and Mayor Bradway filed motions for summary judgment. On May 18, 2009, Carlson filed a cross-motion for partial summary judgment.

On August 12, 2009, the District Court granted Appellees' motions for summary judgment and denied Carlson's cross-motion for partial summary judgment. It found that the Township did not breach the employment contract with Carlson either by terminating him in the middle of his term or by failing to enact an ordinance making the tenure statute applicable to him. The Court also found that the Township's failure to enact an

7

ordinance as provided under the tenure statute, its termination of Carlson without notice and an opportunity to be heard, and its termination without cause were not breaches of the covenant of good faith and fair dealing. Finally, the Court granted summary judgment in favor of the Appellees on Carlson's misrepresentation, intentional infliction of emotional distress, and due process claims.

The District Court also granted Appellees' motion for summary judgment on Carlson's retaliation claims under the ADEA and NJLAD. The Court found that although Carlson had presented a prima facie case of discrimination under the statutes, Appellees had articulated several legitimate non-discriminatory reasons for terminating Carlson, and he failed to offer evidence that the defendants' proffered reasons for his termination, including his alleged inadequate job performance and failure to comply with the Committee's directives, were pretextual. Carlson appealed the District Court's January 4, 2010 order denying his Motion for Reconsideration of its grant of summary judgment for his ADEA and NJLAD retaliation claims.

## II. <u>JURISDICTION AND STANDARD OF REVIEW</u>

The District Court had jurisdiction, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. We have jurisdiction, pursuant to 28 U.S.C. § 1291. "We review a denial of a motion for reconsideration for abuse of discretion, but we review the District Court's underlying legal determinations de novo and factual determinations for clear error." <u>Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.</u>, 602 F.3d 237, 246 (3d Cir.

2010) (citing <u>Max's Seafood Café v. Quinteros</u>, 176 F.3d 669, 673 (3d Cir. 1999))

(internal quotation marks omitted).  We exercise plenary review over the District Court's

grant of summary judgment and apply the same standard that the District Court should

have applied.  <u>Howley v. Mellon Fin. Corp.</u>, 625 F.3d 788, 792 (3d Cir. 2010).  We view

the facts in the light most favorable to the non-moving party.  <u>Jakimas v. Hoffmann-La</u>

<u>Roche, Inc.</u>, 485 F.3d 770 (3d Cir. 2007).  Summary judgment is appropriate when the

movant shows that there is no genuine dispute as to any material fact and that the movant

is entitled to judgment as a matter of law.  <u>See</u> FED. R. CIV. P. 56(a) (amended Dec. 1,

2010).

### III.  <u>ANALYSIS</u>

We apply the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>,

411 U.S. 792 (1973) to ADEA claims.[5]  <u>See</u> <u>Smith v. City of Allentown</u>, 589 F.3d 684

(3d Cir. 2009).  New Jersey also uses the <u>McDonnell Douglas</u> burden-shifting scheme for

discrimination cases.  <u>See</u> <u>Jakimas v. Hoffmann-La Roche, Inc.</u>, 485 F.3d 770, 788 (3d

Cir. 2007) ("the standards applied to ADEA cases are applied to age claims under the

---

[5] The anti-retaliation provision of the ADEA provides:

> It shall be unlawful for an employer to discriminate against any of his
> employees . . . because such individual . . . has opposed any practice made
> unlawful by this section, or because such individual . . . has made a charge,
> testified, assisted, or participated in any manner in an investigation,
> proceeding, or litigation under this chapter.

29 U.S.C. § 623(d).

9

NJLAD unless there is divergent language between the statutes.") (citing Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 305 (3d Cir. 2004)).

To establish a prima facie claim for retaliation, a plaintiff must show that: "(1) he was engaged in protected activities; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506, 508-09 (3d Cir. 2004) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000)).

If the plaintiff establishes a prima facie case of retaliation, under McDonnell Douglas, "the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its conduct." Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997)) (internal quotation marks omitted). "The employer's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action]." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (quoting Krouse, 126 F.3d at 500) (internal quotation marks omitted). If the employer does so, the burden shifts back to the employee, who "must produce sufficient evidence to allow a reasonable fact finder to conclude that the proffered reasons for not rehiring

10

him are a pretext for illegal discrimination or retaliation." Sarulla v. United States Postal Service, 352 F.3d 789, 799-800 (3d Cir. 2003).

A plaintiff may meet that burden, defeating a summary judgment motion, by providing evidence that would allow a fact finder reasonably to "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action." Id. (citing Jones v. School Dist. of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

Here, the District Court held that Carlson established a prima facie case of age discrimination.[6] The District Court then found that the Township met its burden by articulating several legitimate non-discriminatory reasons for Carlson's termination: "(1) he failed to perform his job duties competently; (2) he was a poor manager who harassed subordinates; and (3) he failed to follow the directives of Township Committee Members." (App. at 26.) The Court found that Carlson, however, failed to meet his burden to produce sufficient evidence of pretext to survive summary judgment. We agree.

As we have recognized, proving pretext "places a difficult burden on the plaintiff." Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005) (quoting Fuentes, 32 F.3d at

---

[6] Carlson's 'protected activity,' which the District Court acknowledged, consisted of Carlson's objections to the harassment of older Township employees and submitting a charge information questionnaire to the EEOC. (App. at 25.)

765). To survive summary judgment, a plaintiff must put forward "such weaknesses, implausabilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence." Kautz, 412 F.3d at 467 (internal citations and quotation marks omitted).

Carlson identifies three issues which he believes would allow a reasonable fact-finder to infer that the Township's proffered legitimate reasons were pretexual.[7] First, Carlson argues that the sequence of events leading up to his termination varied from the Township's usual practices. Specifically, he claims that Drummond's "sudden request" to fire him on or about August 29, 2005, casts doubt on the legitimacy of the Township's asserted justification because his "termination resolution was prepared at an unofficial meeting held between just two of the five Township Committee members and the Township's attorneys." (Appellant's Br. at 26.)

In support of this notion, Carlson cites Atlantic City Convention Ctr. Auth. v. South Jersey Pub. Co., Inc., 637 A.2d 1261 (N.J. 1994) for its pronouncement that New Jersey's Open Public Meeting Act ("OPMA" or "the Act") "requires adequate written notice of at least forty-eight hours to the public of all regularly-scheduled governmental meetings and any special meetings." Id. at 1265 (citing N. J. STAT. ANN. § 10:4-8(d), -

---

[7] Appellees dispute the District Court's finding that Carlson presented a prima facie case of retaliation. (Appellees' Br. at 5.) We need not undertake this analysis because assuming, arguendo, that Carlson establishes a prima facie case, he cannot carry his burden to demonstrate pretext.

9(a)).  Although "[w]e have recognized that [a] violation of company policy can constitute a pretext for unlawful discrimination under certain circumstances," Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 278 (3d Cir. 2010) (citing Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 322 (3d Cir. 2000)) (internal quotation marks omitted), Carlson does not present evidence that this was a meeting of the Township Committee and that it therefore should have been so noticed.  Carlson does not present evidence that in instructing the attorneys to prepare a resolution, any Committee procedures were violated.[8]  The Committee voted on September 20, 2005 not to renew its contract with Dennis Carlson.  (App. at 280.)

Carlson also claims that the temporal proximity between his notice to the Township, through his grievance request, of his EEOC charge on August 29, 2005 and his termination on September 20, 2005 "should have been afforded greater weight as highly suggestive evidence of temporal causation."  (Appellant's Br. at 24.)  The District

---

[8] Carlson also claims that, as direct evidence of the Township's "retaliatory animus," (Appellant's Br. at 28), the Township "refus[ed] his exercise of a guaranteed internal grievance process, expressly in part because he had filed with the EEOC." Id. at 28-29. Carlson's argument fails.  In its letter in response to Carlson's grievance, the Township stated that because Carlson's August 26, 2005 meeting with Mayor Bradway and Mr. Drummond was "part of [his] obligation and not a disciplinary action . . . no grievance procedure is applicable." (App. at 526.)

Carlson does not present evidence to the contrary, nor does the grievance policy in the record. (See App. at 319.)  The Township acknowledged in its response that Carlson had "filed with the EEOC;" however, this statement alone is not sufficient to suggest that the Township's denial of his grievance was improper and was contrary to Township policy.

13

Court found that this temporal proximity, approximately one month apart,[9] supported a prima facie case of retaliation by supporting an allegation of causation. Carlson v. Twp. of Lower Alloways Creek, No. 06-3779, 2009 WL 2496523 (D.N.J. August 12, 2009). Although we are not limited to considering temporal proximity in the prima facie step of the McDonnell Douglas analysis, see Farrell, 206 F.3d at 286-87, ("nothing about the McDonnell Douglas formula requires us to ration the evidence between one stage or the other"), that proximity alone does not, in this case, allow for the reasonable inference that the Township's explanations were fabricated. For example, in Farrell, reversing summary judgment for failure to show a prima facie case, the court found that "taken as a whole, the behavior of [a department director], the timing of Farrell's termination and the inconsistencies she raised in [the defendant's] explanation for her termination [we]re sufficient to create the required inference." Farrell, 206 F.3d at 286. Unlike Farrell, Carlson has not presented sufficient evidence to create the required inference of pretext.

---

[9] Carlson posits that the temporal proximity of his protected action and adverse activity is closer to two to three days because Carlson filed his grievance on August 27, 2005 and Drummond approached Mayor Bradway about firing Carlson within a few days after that. Drummond testified in his deposition that he approached Mayor Bradway about firing Carlson prior to his August 29, 2005 receipt of the grievance. Even accepting Carlson's assertion and assuming that Drummond was aware of the grievance when he approached Bradway about firing Carlson, we do not believe that a two to three day proximity alone shows "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the Township's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" Krouse, 126 F.3d at 504 (quoting Fuentes, 32 F.3d at 765).

14

Carlson next claims that following the Township's abandonment of its December 2004 charges against him, there is a lack of documentation in the record of poor job performance. Thus, Carlson appears to argue that because those disciplinary charges were not continued, the Township cannot rely on any evidence relating to those charges in its explanation for his termination. However, he does not offer sufficient support for this assertion.

The Township presented legitimate nondiscriminatory reasons through the sworn affidavits and testimony of Township Committee members about why Carlson was terminated. The evidence regarding his termination also included Carlson's July 2004 notice of a complaint of hostile work environment (App. at 386); the documented December 2004 disciplinary charges that were brought against Carlson; a July 2004 memorandum (from then-Deputy mayor Richard Harris, advising him to consult the Township Code Book pertaining to his duties) which stated, "I am asking you to review this because of the meeting we held yesterday (July 1, 2004) and your interpretation that the Committee does not have the authority to make requests or provide direction as to how your department is run," (App. at 241); the transfer of two of his employees, Jon Finlaw and Bobby Fleckenstein, to other units; and Carlson's objection to the August 26, 2005 meeting in his grievance letter.

Although Carlson asserts that his alleged harassment of Mr. Hinchman and of certain employees in 2003 and 2004 and his alleged resistance to being closely monitored

15

by the Committee in his performance of responsibilities as raised in the discontinued 2004 disciplinary proceedings "would not justify" his September 2005 termination, that is not the proper inquiry. Carlson's disagreement does not suffice to show pretext. See Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991) ("The fact that an employee disagrees with an employer's evaluation of him does not prove pretext"), overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993).

Finally, Carlson claims that the Township changed its reasons for his termination from the time of its response to the EEOC charge to the instant lawsuit, and contends that this is evidence that the Township's proffered reasons are pretext. In its response to Carlson's EEOC charge allegation that he was subjected to disciplinary charges prior to being removed from his position as Superintendent, the Township stated that "[the 2004 disciplinary] charges lodged against [Carlson] were not in temporal proximity to the non-renewal of his contract and his removal. The two events were nearly a year apart." (App. at 608.)

Carlson claims that, in contrast, in the instant lawsuit, the Township relies in part on informal employee complaints lodged against him, some of which were allegedly raised before the December 2004 disciplinary charges abandoned by the Township following the March 17, 2005 hearing. (Appellant's Br. at 28.) The Township's recognition in its EEOC response of the fact that Carlson's disciplinary charges were not in temporal proximity to his removal acknowledges the length of time that passed

16

between the charges and his firing. That does not amount to an assertion that the Township found all allegations or complaints that led to the disciplinary charges to be untrue, or that it never relied on any of them in employment decisions about Carlson. Therefore, the Township's later use of, and reliance on, allegations made at the time of those charges is not a contrasting position. Carlson's argument is unavailing.

Furthermore, in its EEOC response in the context of Carlson's retaliation claim, the Township stated that it "had a legitimate non-retaliatory reason for its decision to remove [him] in conjunction with its decision not to renew his contract" (App. at 616), and stated its belief that as a contracting party, it "did not need cause or a hearing to effectuate its decision" once it had the required number of votes of the governing body. (App. at 617.) The Committee's current position does not change the reason for terminating Carlson from that previously articulated in its EEOC response; instead, it presents additional reasons for the decision. Cf. Smith v. Borough of Wilkinsburg, 147 F.3d 272, 282 (3d Cir. 1998) (finding variation in employer's articulated reasons before the EEOC where it claimed that it did not renew plaintiff's employment contract because he failed to file an application, in contrast to trial, where employer emphasized his poor job performance). We do not find that a reasonable jury could conclude that this was a shift in the Township's position.

Carlson's proffered evidence, viewed collectively, does not support the reasonable inference of pretext required to survive summary judgment.

## IV. **CONCLUSION**

For the foregoing reasons, we find that Carlson has not provided sufficient evidence that would allow a reasonable fact finder to disbelieve the Township's articulated legitimate reasons or believe that invidious discrimination was more likely than not the motivating or determinative cause of the Township's termination of Carlson. See Sarulla, 352 F.3d at 799. We therefore affirm the District Court's judgment. Finding no error in the District Court's initial order granting summary judgment, we also find no abuse of discretion in the District Court's denial of Carlson's subsequent Motion for Reconsideration.