Dev **IYER**, Plaintiff

v.

Mark **EVERSON**, Commissioner, Internal Revenue Service; John P. Snow, Secretary, Department of Treasury, Defendants.

No. CIV.A. 04CV2259.

United States District Court, E.D. Pennsylvania.

Aug. 18, 2005.

Gregory J. Spadea, Esq., Spadea & Assocs. LLC, Ridley Park, PA, for Plaintiff.

Barbara Rowland Esq., U.S. Attorney's Office, Washington, DC, for Defendant.

*EXPLANATION AND ORDER*

ANITA B. BRODY, District Judge.

Plaintiff Dev Iyer ("Iyer") brings this employment discrimination action against defendants John P. Snow, Secretary of the Department of Treasury, and Mark W. Everson, Commissioner of the Internal Revenue Service (collectively "the IRS"), under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Fair Labor Standards Act ("FLSA") as amended by the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). Jurisdiction is appropriate based on the existence of a federal question pursuant to 28 U.S.C. § 1331.

Iyer alleges that the IRS discriminated against him on the basis of his race, color, religion, sex, national origin, and age. His complaint includes claims of retaliation, hostile work environment, and sexual harassment. Currently before me is the IRS's motion for partial summary judgment. The IRS argues that the following claims should be dismissed: (1) Iyer's claim that his non-selection for an industry economist position constituted employment discrimination; (2) Iyer's claim that his non-selection for an attorney position constituted employment discrimination; (3) Iyer's claim that he was the subject of *quid pro quo* sexual harassment; and (4) Iyer's EPA claims.[1]

## FACTUAL BACKGROUND [2]

Plaintiff Dev Iyer was born on July 11, 1953. (Iyer Dep. at 7.) Iyer identifies himself as Hindu, Asian, Asian Indian, and

---

1. The IRS also argues that Iyer's class action claim that employees in the Small Business/Self–Employed Division were subject to systemic discrimination should be dismissed because Iyer failed to timely appeal the administrative law judge's denial of class certification. (Def.'s Mot. at 16.) However, this case was not filed as a class action and Iyer is only bringing an individual claim of discrimination. (Pl.'s Resp. at 16 n. 10.) Therefore, this particular portion of the IRS's motion is moot.

2. In this section, I include only the facts necessary to deal with the particular claims chal-

black. (Second Am. Compl. at 8.) Iyer began working for the IRS as a revenue agent in the Pennsylvania district of the IRS in June 1991. (Iyer Dep. at 18–19, 29.)

Between August and November of 1998, Iyer filed an Equal Employment Opportunity ("EEO") complaint concerning his reassignment from the audit division in King of Prussia, PA to the quality measurement section in Philadelphia, PA. (Iyer Dep. at 82–83; Pl.'s Mot. at 4; Pl.'s Mot. Ex. 1.) Between March and July of 1999, Iyer filed at least one additional EEO complaint. (Pl.'s Mot. Ex. 1.) The basis of this EEO complaint is not clear from the record.[3] From mid-August of 1999 to early September of 1999, various IRS officials held meetings regarding Iyer. (Pl.'s Resp. Ex. 17.)[4] According to James Louis Capobianco, a manager in the Pennsylvania district of the IRS, Iyer filed several "Title VII, EEO and EEO-related complaints" against the IRS from 1998 through 2002 and various IRS management officials in the Pennsylvania and New Jersey districts knew about these complaints. (Pl.'s Resp. Ex. 6 (Capobianco Aff.).)

*The Industry Economist Position*

In April or May of 1999, Iyer applied for an industry economist position in the New Jersey district of the IRS. (Iyer Dep. at 86.) At the time he applied for the industry economist position, Iyer was 46–years–old. Iyer and one other applicant, Kevin Mackesey ("Mackesey"), made the IRS's "best qualified" list for the position. (Iyer Dep. at 86, Pl.'s Resp. Ex. 9.) Mackesey is white and was 34–years–old at the relevant time. (Pl.'s Resp. at 8.) In the IRS's ranking process for the position, Iyer received the higher score of 43.57 while Mackesey received a score of 39.86. (Pl.'s Resp. Ex. 4.)

One IRS manager testified that, when choosing among applicants from the best qualified list, "In general I select the one with the highest numbers." (Pl.'s Ex. 13 at 756.)[5] Another IRS manager testified that, even though he is free to select anyone from the list of best qualified applicants when he is filling a position, "[u]nless there is some other factor, such as an interview, I, in all cases, will select the candidates in the rank order." (Pl.'s Ex. 12 at 499, 501.)[6] According to Wayne

---

lenged in the instant motion. However, I note that Iyer's complaint contains allegations of numerous other discriminatory incidents that the IRS does not address in its motion and are not included in this section. (Second Am. Compl. at 4–7.)

**3.** Neither party provides a clear statement, with citations to the record, of when and why Iyer filed his EEO complaints. Nor do the parties provide a clear statement as to how many EEO complaints Iyer filed. Iyer alleges that he filed "innumerous [sic] EEO and EEO related complaints." (Pl.'s Resp. at 8.) According to Iyer's deposition and exhibit 1 of his response, he filed at least one EEO complaint between August and November of 1998 and one EEO complaint between March and July of 1999.

**4.** Exhibit 17 to Iyer's response consists of minutes of "memorandum of contact" between IRS Pennsylvania District Director

Deborah Reilly and others, including Commissioner of the Office for Complaints Debbie Palomino and General Legal Services Attorney Bonnie Edwards. The minutes do not clearly state what kind of complaints Iyer made. The minutes mention a "hostile work environment" complaint and a whistle-blowing complaint regarding an "earned income tax credit issue," but they do not specifically mention any EEO complaints. (Pl.'s Resp. Ex. 17 at J–1, J–3.)

**5.** Exhibit 13 of Iyer's response is an excerpt of IRS manager Thomas Britt's testimony before EEOC Examiner Susan Arnold Flynn on January 17, 2001.

**6.** Exhibit 12 of Iyer's response is an excerpt of IRS manager Patrick Trofa's testimony before EEOC Examiner Susan Arnold Flynn on January 17, 2001.

Beyer ("W.Beyer"), who selected the final candidate for the industry economist position, a job announcement normally indicates whether an interview will be part of the selection process. (W. Beyer Dep. at 16–17; Pl.'s Resp. Ex. 9.)

The job announcement for the industry economist position did not indicate that interviews would be conducted in the selection process. (Pl.'s Resp. Ex. 3.) John Kaffenberg ("Kaffenberg"), who expected to supervise the person selected for the industry economist position and was involved in the selection process, conducted interviews of Iyer and Mackesey for the position. (Pl.'s Resp. Ex. 10.) Neither party indicates when these interviews took place.

At some point during the selection process, Kaffenberg called Henry Singleton ("Singleton"), who worked in the Pennsylvania district of the IRS, to ask if Singleton knew Iyer or his work habits. (Pl.'s Resp. Ex. 7 at 53.)[7] Singleton did not know Iyer, but said he would call Bill Bennett ("Bennett"), who was Iyer's supervisor at the time, and get back to Kaffenberg. (*Id.*) When Singleton called Bennett, Bennett indicated that Iyer was "very strong technically" and a "very good investigator." (Pl.'s Resp. Ex. 8 at 250.)[8] Bennett also indicated that Iyer had filed EEO complaints. (Pl.'s Resp. Ex. 8 at 251–52.) Neither party indicates whether these conversations took place before or after the job interviews.

On July 15, 1999, Kaffenberg wrote a memo to W. Beyer recommending that Mackesey be selected for the job. (Pl.'s Resp. Ex. 10.) Kaffenberg wrote that "both candidates are qualified for the position and are acceptable." (*Id.* at 1.) Kaffenberg also wrote that even though Iyer had a higher score in the ranking process

than Mackesey, Mackesey performed better in the interview. Kaffenberg found Iyer to be "very book smart." (*Id.* at 1.) However, Kaffenburg also wrote that during the interview, Iyer "had difficulty in explaining basic concepts such as comparability. His answers to the interview questions also centered on cost concepts rather than economic principals and practical problem solving." (*Id.* at 1.) On the other hand, Mackesey, according to Kaffenberg, "showed a greater ability to apply what he has learned." (*Id.* at 2.)

W. Beyer selected Mackesey for the position, but Mackesey declined it. (W. Beyer Dep. at 18–19.) W. Beyer stated that he did not offer the position to Iyer after Mackesey declined it because "[i]n reviewing the notes of the panel in the promotion package, in reviewing the interviews that were conducted of both candidates, it was my [W. Beyer's] opinion that Mr. Iyer did not have a good interview and did not demonstrate the traits that would make him successful in the position." (*Id.* at 19.) W. Beyer further stated that "Mr. Iyer did not demonstrate the application of the knowledges [sic] that were indicated in his application." (*Id.* at 30.) W. Beyer did not select anyone for the position and he "closed" it as a "non-select." (*Id.* at 23.)

*The Attorney Position*

In between December 2000 and March 2001, Iyer applied for an attorney position in the IRS Office of Chief Counsel in the Philadelphia Small Business/Self–Employed Division ("SB/SE"). (Iyer Dep. at 164–65; 172–73.) Iyer learned about the position from a posting on a bulletin board at Villanova University Law School. (Iyer Dep. at 171.) The posting stated, "We are seeking applicants who have either recent-

---

**7.** Exhibit 7 of Iyer's response is an excerpt of Singleton's testimony before EEOC Examiner Susan Arnold Flynn on January 17, 2001.

**8.** Exhibit 8 of Iyer's response is an excerpt of Bennett's testimony before EEOC Examiner Susan Arnold Flynn on January 17, 2001.

ly completed or are currently enrolled in an LLM (in Taxation) program." (Pl.'s Resp. Ex. 14 at PG21.)[9]

At the time that Iyer applied for the position, he had no litigation experience, had never been in practice as a lawyer, had never worked for a law firm, and had never clerked for a judge. (Iyer Dep. at 167–68.) Iyer received one grade of F and at least two Ds at Temple University Law School. (*Id.* at 26.) Iyer did not have a LLM. Iyer was not offered an interview for the position. (*Id.* at 175.)

Harvey Stephen Kesselman[10] ("Kesselman"), IRS Area Counsel of the Philadelphia SB/SE Division was involved in the hiring process for this position. (Iyer Dep. at 180; Pl.'s Resp. Exs. 14 & 15.) On March 30, 2001, Kesselman wrote a memorandum to Thomas R. Thomas ("Thomas"), the selecting official located in Maryland, recommending that Thomas select James Beyer ("J.Beyer") and Jeffrey Venzie ("Venzie") for the two available attorney positions. (Def.'s Mot. Ex. C at C–1.) J. Beyer graduated *cum laude* from Temple University Law School, was ranked in the top 25% of his class, and had worked for six years as a regional counsel with IRS General Legal Services. (*Id.* at C–1–2.) Venzie graduated from Widener University Law School, worked on a law journal, had interned for a federal magistrate

judge, and had clerked for a court of common pleas judge. (*Id.* at C–3.) Venzie also had worked for a law firm, was in the process of obtaining an LLM in taxation from Villanova University Law School and had principally grades of "A" and "B" the LLM program. (*Id.*) Neither party identifies J. Beyer's or Venzie's age, race, religion, national origin, or color.

Upon Kesselman's recommendation, Thomas hired J. Beyer and Venzie. (Thomas Dep. at 9, 37.) Thomas did not interview any of the candidates and did not know the name of any other candidates except for the two that Kesselman recommended. (*Id.* at 38.) At the time Thomas made the hire, he did not know that Iyer had applied for the job and he did not know Iyer's age, sex, race, national origin, color, or religion. (*Id.* at 39–40.) He also did not know that Iyer had filed prior EEO complaints. (*Id.* at 40.)[11]

*Interactions with Teresa C. Deschenes*

From March to September of 2001, Teresa C. Deschenes ("Deschenes") was Iyer's immediate supervisor. (Iyer Dep. at 198.) Deschenes gave Iyer two absent-without-leave ("AWOL") letters in April to May of 2001. (Iyer Dep. at 204; Pl.'s Resp. Ex. 22.) These AWOL letters resulted in Iyer's pay being docked. (Iyer Dep. at 204.) Iyer approached Deschenes

---

**9.** Iyer alleges in his response to the instant motion that this "announcement was placed exclusively at the Villanova University Graduate Law School Bulletin Board, and no where else." (Pl.'s Resp. at 12.) Even though Iyer states that he has evidence supporting this allegation, he fails to present any such evidence in his submissions.

**10.** Iyer alleges that Kesselman was aware of Iyer's prior EEO activity. The only evidence that Iyer offers in support of this allegation is a minute sheet from a meeting in August 1999 stating, "Bonnie Edwards will give heads-up to Steve Kesselman on District forwarding request for advice on earned income tax cred-

it issue to District Counsel." (Pl.'s Resp. Ex. 17 at J–1.) The "earned income tax credit issue" was raised by Iyer, and Iyer was discussed at this August 1999 meeting. However, the minute sheet from the meeting does not mention any of Iyer's EEO complaints.

**11.** Unlike with the economist position, there is no evidence that the IRS conducted a ranking process in hiring for the attorney position and there is no evidence that the candidates were numerically scored. Unlike with the economist position, Iyer does not argue that there was anything unusual in the fact that interviews were conducted for the attorney position.

requesting that these AWOL letters be withdrawn. (*Id.*) According to Iyer's EEO complaint:

> On various occasions manager Deschenes has informed me [Iyer] that the matter of AWOL can be "sorted out" outside the office "with the proper atmosphere" and that the office environs is not suitable to discuss these matter. [sic] I interpret manager Deschenes [sic] remarks as a request for a "date" and even after repeated refusal on my part, Deschenes keeps persisting.[12]

(Pl.'s Resp. Ex. 22.) According to Iyer's deposition, Deschenes "basically said, I understand your issue, and you know what, we can sort this matter out; let's discuss outside; let's go outside, have lunch and we'll discuss this matter." (Iyer Dep. at 204.) Iyer also testified, "The going out to lunch and the withdraw [sic] of the AWOL letters were not just a one-day incident. It was a period over several days ...." (*Id.* at 209.)

## STANDARD OF REVIEW

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). There is a "genuine" issue if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must make an initial showing that there is

no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-movant must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. In determining whether the non-moving party has established each element of its case, the court must draw all reasonable inferences in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## DISCUSSION

The IRS moves for summary judgment on the following claims: (1) Iyer's claim that his non-selection for an industry economist position constituted employment discrimination; (2) Iyer's claim that his non-selection for an attorney position constituted employment discrimination; (3) Iyer's claim that he was the subject of *quid pro quo* sexual harassment; and (4) Iyer's EPA claims. For the reasons set forth below, the IRS's motion is granted as to Iyer's claims relating to the attorney position, Iyer's sexual harassment claim, and Iyer's EPA claims. The motion is granted in part and denied in part as to Iyer's claims relating to the industry economist position.

*Iyer's Non-selection for an Attorney Position*

■ Iyer claims that the IRS's failure to select him for an attorney position constituted disparate treatment on the basis of his age, race, sex, religion, national ori-

---

**12.** Iyer's EEO complaint, addressed to the Complaint Management Division of the IRS, also alleges the following: "Deschenes also promised that my illegally docked pay by collection chief D.A. Briggs (from 2/1/3002 through 2/10/2001 for a total of 28 hours) will be released if she is "pleased" by my agreeing to her "outside the office" requests." (Pl.'s Resp. Ex. 22.) However, Iyer's response to the instant motion does not refer to Iyer having any pay docked by "D.A. Briggs." Nor does Iyer's complaint mention this incident. Iyer's response only discusses the AWOL letters. Therefore, I will not consider this allegation from Iyer's EEO complaint because Iyer does not raise it in the instant case.

gin, and color and that it was retaliation for prior EEO activity. (Second Am. Compl. at 9.)[13] Iyer does not provide any evidence of direct discrimination with regards to the attorney position. Therefore, I evaluate Iyer's claims of discrimination and retaliation under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Kautz v. Met–Pro Corp.*, 412 F.3d 463, 465 (3d Cir.2005); *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir.2005).

Under the *McDonnell Douglas* framework, Iyer must first establish a *prima facie* case of discrimination. *Fasold*, 409 F.3d at 184. If Iyer is able to do so, the burden then shifts to the IRS to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. *Id.* If the IRS articulates one or more such reasons, Iyer must then proffer evidence that is sufficient to allow a reasonable trier of fact to find by a preponderance of the evidence that the IRS's proffered reasons are false or pretextual. *Id.* Although the burden of production may shift during the *McDonnell Douglas* inquiry, the ultimate burden of persuading the trier of fact that the IRS intentionally discriminated against Iyer remains at all times with Iyer. *Id.*

Prima facie *case of discrimination*

■ The requirements for a *prima facie* case of discrimination under Title VII and discrimination under the ADEA are substantially the same. *Sarullo v. United States Postal Service*, 352 F.3d 789, 797 n. 6 (3d Cir.2003). To show a *prima facie* case of employment discrimination, Iyer must show that (1) he is a member of a protected class; (2) he was qualified for the position he sought; (3) he was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to Iyer's to fill the position.[14] *Sa-*

---

13. Parts of Iyer's argument with respect to the attorney position appear to be a disparate impact, as opposed to a disparate treatment, argument. (Pl.'s Resp. at 13.) The job posting was directed towards those "who have either recently completed or are currently enrolled in an LLM (in Taxation) program." (Pl.'s Resp. Ex. 14 at PG21.) Iyer alleges, without any supporting evidence, that this posting was placed "exclusively at the Villanova University Graduate Law School Bulletin Board, and no where else." (Pl.'s Resp. at 12.) Iyer argues that this posting discriminated on the basis of age and race because "[i]t is generally known that more younger than older applicants are enrolled in the LL.M program" and the "announcement is exclusively for Villanova Graduate Tax students who tend to be predominantly white." (*Id.* at 13.)

Neither Iyer's complaint nor his response to the instant motion specifically states that he brings a disparate impact claim. However, even if Iyer is alleging a disparate impact claim, Iyer's claim fails. Iyer fails to present any evidence regarding the age or race of those enrolled in Villanova University's taxa-

tion LLM program. More importantly, Iyer does not present any evidence of disparity on any basis in the IRS's pattern of hiring attorneys. *See Newark Branch, NAACP v. City of Bayonne*, 134 F.3d 113, 122 (3d Cir.1998) ("In order to establish a *prima facie* case of disparate impact discrimination, the plaintiff must demonstrate that application of a facially neutral standard has caused a '*significantly discriminatory hiring pattern.*'") (emphasis added). Therefore, Iyer fails to establish a disparate impact claim with regards to the IRS's hiring of attorneys.

14. Some courts suggest that the fourth factor requires a showing that other similarly situated employees outside of plaintiff's protected class were more favorably treated under similar circumstances. *Sarullo*, 352 F.3d at 797 n. 7. The Third Circuit has explicitly rejected such a requirement. *Id.* Rather, plaintiff must show that he was not hired "under circumstances that raise an inference of unlawful discrimination." *Id.* Showing that similarly situated employees outside of plaintiff's protected class were more favorably treated under similar circumstances is one

*rullo*, 352 F.3d at 797. The *prima facie* test remains flexible and must be tailored to fit the specific context in which it is applied. *Id.* at 798. According to the Third Circuit, "[t]he central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." *Sarullo*, 352 F.3d at 798. The plaintiff "must establish some causal nexus between his membership in a protected class" and the adverse employment decision. *Id.*

■ Iyer fails to establish the second element of a *prima facie* case of discrimination on the basis of age, race, sex, religion, national origin, or color because he fails to show that he was qualified for the attorney position. When Iyer applied for the attorney position sometime in December 2000 to March 2001, he had no litigation experience, had never been in practice as a lawyer, had never worked for a law firm, and had never clerked for a judge. (Iyer Dep. at 167–68.) Iyer received one grade of F and at least two Ds at Temple University Law School. (*Id.* at 26.) Iyer also did not have an LLM in taxation. In contrast, James Beyer, one of the successful candidates for the attorney position, graduated *cum laude* from Temple University and had six years experience as an attorney with IRS General Legal Services. (Def.'s Mot. Ex. C at C–1–2.) Jeffrey Venzie, the other successful candidate, had interned for a federal magistrate, clerked in a court of common pleas, was working as an attorney in a law firm, was in the process of getting an LLM in taxation and had principally grades of As and Bs in the LLM program. (*Id.* at C–3.) Thus, especially in comparison with the selected candidates, Iyer fails to show that he was qualified for the attorney position.

■ Iyer also fails to establish the fourth element of a *prima facie* case—that the IRS, under circumstances that raise an inference of discriminatory action, continued to seek out individuals with qualifications similar to Iyer's to fill the attorney position. Iyer does not present any "circumstances that raise an inference of discriminatory action." *Sarullo*, 352 F.3d at 797. Iyer fails to present any evidence as to the age, race, religion, national origin, or color of the successful candidates, J. Beyer and Venzie. It is safe to assume that the two successful candidates, James and Jeffrey, are male, as is Iyer. Thus, Iyer presents no evidence that the IRS was treating him less favorably than others because of his race, color, religion, sex, or national origin. He also does not establish a causal nexus between his race, color, religion, sex, or national origin and his non-selection for the attorney position. Therefore, Iyer fails to make out a *prima facie* case of disparate treatment discrimination on the basis of his age, race, sex, religion, national origin, or color.

### Prima facie *case of retaliation*

■ Iyer also claims that his non-selection for the attorney position was retaliation for his prior EEO activity. In order to establish a *prima facie* case of retaliation, Iyer must produce evidence showing that (1) he engaged in protected employee activity, (2) that the IRS took adverse employment action after or contemporaneously with Iyer's protected activity, and (3) that a causal link exists between Iyer's protected activity and the IRS's adverse action. *Fasold*, 409 F.3d at 188; *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir.2000). Iyer establishes the first and second element of a *prima facie* retaliation claim. Iyer filed at least one EEO complaint between August and November

---

way, but not the only way, to raise an inference of unlawful discrimination.

of 1998 and another EEO complaint between March and July of 1999. (Pl.'s Resp. Ex. 1; Iyer Dep. at 82–83.) The filing of these complaints amounts to protected employee activity. Iyer's non-selection for the attorney position took place in or about March of 2000, after he filed his EEO complaints. (Def.'s Mot. Ex. C at C–1.) Iyer's non-selection was an adverse employment action.

■ However, Iyer fails to establish the third element of a *prima facie* case of retaliation because he fails to establish a causal link between his EEO filings and his nonselection for the attorney position. There is unrebutted evidence that Thomas, the selecting official for the attorney position, had no knowledge of Iyer's EEO complaints when Thomas made the selections for the attorney position. (Thomas Dep. at 40.) Iyer alleges that Kesselman, who recommended that J. Beyer and Venzie be selected for the attorney positions, was aware of Iyer's prior EEO activity. (Pl.'s Resp. at 13.) However, Iyer only presents evidence that Kesselman was informed of an earned income tax credit issue that Iyer raised. (Pl.'s Resp. Ex. 17 at J–1.) Iyer does not present any other evidence showing that Kesselman was actually aware of Iyer's EEO complaints. Additionally, Iyer cannot rely on close temporal proximity to establish a causal link between his EEO complaints and his non-selection for the attorney position. At the latest, Iyer filed an EEO complaint in July 1999. At the earliest, Iyer's nonselection took place in March 2000. This eight-month gap, without any other evidence, is not suggestive of causation. *Compare Jalil v. Avdel Corp.*, 873 F.2d 701

(3d Cir.1989) (finding that plaintiff established causation for purposes of his *prima facie* retaliation case merely by showing that his discharge occurred only two days after his employer received notice of his EEOC claim). Because Iyer fails to present any evidence of a causal link between his EEO complaints and his non-selection for the attorney position, Iyer fails to establish a *prima facie* case of retaliation with regards to the attorney position.

Because Iyer does not establish a *prima facie* case for any of his claims in connection with the attorney position, these claims must be dismissed.[15]

*Quid Pro Quo Sexual Harassment*

■ Iyer claims that he was the subject of *quid pro quo* sexual harassment by his supervisor Teresa Deschenes. (Second Am. Compl. at 9.) According to the Third Circuit:

unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute *quid pro quo* sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment or (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.

*Bonenberger v. Plymouth Township*, 132 F.3d 20, 27 (3d Cir.1997) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir.1997)). Iyer's only evidence of "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" consists of his testimony that Deschenes would only dis-

---

**15.** Even assuming that Iyer was able to establish a *prima facie* case on his claims relating to the attorney position, Iyer fails to present evidence from which a reasonable factfinder could infer that the IRS's proffered non-discriminatory reasons for not selecting Iyer

were a pretext, as required under the *McDonnell Douglas* framework. The IRS selected J. Beyer and Venzie and not Iyer because J. Beyer and Venzie were more qualified than Iyer. Iyer fails to present any evidence rebutting this.

cuss Iyer's AWOL letters outside of the office over lunch. (Pl.'s Resp. Ex. 22; Iyer Dep. at 204, 209.) Absent any other evidence, Deschenes's conduct does not constitute a sexual advance nor is it a request for sexual favors. Iyer does not allege any physical conduct on the part of Deschenes and there is nothing indicating that Deschenes's verbal conduct was of a "sexual nature." Indeed, other than Iyer's own speculation, there is no indication that Deschenes's conduct was in any way linked to Iyer's sex. Therefore, Iyer's claim of *quid pro quo* sexual harassment is dismissed.

*Subject Matter Jurisdiction over Iyer's Equal Pay Act claims*

The IRS argues that this court lacks subject matter jurisdiction over Iyer's claims under the Fair Labor Standards Act ("FLSA") as amended by the Equal Pay Act ("EPA") and that the Court of Federal Claims has exclusive jurisdiction over Iyer's EPA claims. Because the EPA does not contain a specific jurisdictional grant,[16] the jurisdiction of Iyer's EPA claims against the IRS, an agency of the United States, is subject to the Tucker Act, 28 U.S.C. § 1491(a)(1), and the Little Tucker Act, 28 U.S.C. § 1346(a)(2). Pursuant to the Tucker Act, the Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution or any Act of Congress ... not sounding in tort." 28 U.S.C. § 1491(a)(1). Pursuant to the Little Tucker Act, district courts shall have original concurrent jurisdiction with the Court of Federal Claims over claims against the United States "not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of

Congress ... not sounding in tort ...." 28 U.S.C. § 1346(a)(2).

■ Iyer's claim for compensatory damages exceeds $10,000. (Second Am. Compl. at 10 ("judgment against the defendant and in favor of the plaintiff in the amount of $300,000 for compensatory damages").) Therefore, I do not have subject matter jurisdiction over Iyer's EPA claims and these claims are dismissed. *Barnes v. Levitt*, 118 F.3d 404, 410 (5th Cir.1997) (district court lacked jurisdiction over plaintiff's EPA claims, exceeding $10,000, against the Securities Exchange Commission); *Weber v. Hurtgen*, 297 F.Supp.2d 58, 62 (D.D.C.2003) (district court lacked jurisdiction over plaintiff's EPA claims, exceeding $10,000, against the National Labor Relations Board); *see also Saraco v. Hallett*, 831 F.Supp. 1154, 1159 (E.D.Pa. 1993) (DuBois, J.) (to the extent plaintiffs' FLSA claims against the United States Customs Service exceeded $10,000, the Court of Federal Claim had exclusive jurisdiction over those claims).

*Iyer's Non-selection for the Industry Economist Position*

■ Iyer claims that the IRS's failure to hire him for the industry economist position constituted employment discrimination on the basis of age, sex, race, national origin, color, and religion. (Second Am. Compl. at 8.) He also brings a retaliation claim and a hostile work environment claim in connection with his non-selection for this position. (*Id.*) The IRS moves for summary judgment on all of these claims.

■ The IRS's motion is granted as to Iyer's claim that his non-selection for the industry economist position constituted

---

**16.** Unlike the EPA and the FLSA, Title VII specifically grants jurisdiction to the United States district courts. 42 U.S.C. § 2000e–5(f)(3). The Court of Federal Claims does not

have jurisdiction over Title VII claims. *Osborn v. United States*, 47 Fed.Cl. 224, 232 (2000).

discrimination on the basis of his sex and religion because Iyer fails to establish a *prima facie* case of discrimination on the basis of sex and religion. Iyer fails to establish the fourth element of a *prima facie* case, that "under circumstances that raise an inference of discriminatory action," the employer continued to seek out individuals with qualifications similar to Iyer's to fill the position. *Sarullo,* 352 F.3d at 797. Iyer is unable to raise any inference of discrimination on the basis of sex because the candidate who was selected for the industry economist position (and whom subsequently declined it), Kevin Mackesey, was male, the same sex as Iyer. Iyer also fails to present any evidence that raises an inference of discrimination on the basis of religion. There is no evidence that the IRS had any knowledge of either Iyer's or Mackesey's religion. As stated by the Third Circuit, the "central focus of the *prima facie* case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." Iyer fails to present any evidence that indicates he was not selected for the industry economist position on the basis of his sex or religion. Therefore, the IRS's motion is granted as to these claims.

Genuine issues of material fact exist as to Iyer's claim that his non-selection for the industry economist position constituted employment discrimination on the basis of his age, race, national origin and color. Genuine issues of material fact also exist as to Iyer's retaliation claim and his hostile work environment claim in relation to his non-selection for the industry economist position. Therefore, the IRS's motion is denied as to these claims.

## CONCLUSION

For the reasons stated above, the IRS's motion for partial summary judgment is granted as to Iyer's claims relating to his non-selection for the attorney position, Iyer's claim of *quid pro quo* sexual harassment, and Iyer's EPA claims. The IRS's motion is also granted as to Iyer's claims that his non-selection for the industry economist position constituted discrimination on the basis of sex and religion. However, the IRS's motion is denied as to Iyer's other claims relating to his non-selection for the industry economist position because of the existence of genuine issues of material fact.

### *ORDER*

**AND NOW,** this 16th day of August 2005, it is **ORDERED** that Defendants' Motion for Partial Summary Judgment (doc. # 26) is **GRANTED IN PART** and **DENIED IN PART**:

- Defendants' motion is **GRANTED** as to plaintiff's claims relating to his non-selection for the attorney position; his claim of *quid pro quo* sexual harassment; his claims under the Equal Pay Act; and his sex discrimination and religious discrimination claims relating to his non-selection for the industry economist position;

- Defendant's motion is **DENIED** as to plaintiff's claims of retaliation, hostile work environment, and discrimination on the basis of age, race, color and national origin relating to his non-selection for the industry economist position; and

- Defendants' motion is **DENIED AS MOOT** as to plaintiff's claims regarding discrimination against IRS Small Business/Self–Employed Division employees.

It is **FURTHER ORDERED** that plaintiff's motion to correct clerical errors (doc. # 44) is **GRANTED**.